## MOELLE *v.* SHERWOOD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 103. Submitted January 4, 1893. — Decided March 6, 1893.

Where no appeal lies from a decree of a Circuit Court to this court, the Circuit Court may, under the 88th rule in equity, allow a petition for a rehearing, and may rehear the cause after the adjournment of the court for the term in which the original decree was rendered.

After such a petition is filed, and a hearing had on it in the court below, it is too late to file affidavits and to claim that the amount in controversy exceeded the jurisdictional sum, so that an appeal could have been taken.

The receipt of a quit claim deed does not of itself prevent a party from becoming a *bona fide* holder; and the doctrine expressed in many cases that the grantee in such a deed cannot be treated as a *bona fide* purchaser does not rest upon any sound principle.

THIS was a suit in equity, commenced in June, 1885, in the Circuit Court of the United States for the District of Nebraska, to quiet the title of the complainant to certain real property

described in the bill as the southeast ¼ of section No. 31, township No. 3 north, of range 8 east, of the 6th principal meridian, in Nuckolls County, State of Nebraska, to which the defendant, a citizen of that State, claimed some adverse interest and title. The bill alleged that the complainant was a citizen of New York, and that, at the commencement of the suit, and for a long time prior thereto, he was the owner in fee simple, and entitled to the possession of the described premises. His chain of title was as follows:

1. A patent of the land in controversy and of other land from the United States, dated November 1, 1871, issued to George L. Bittinger, and recorded in Nuckolls County, December 31, 1883.

2. A deed bearing date on the 22d of August, 1882, executed by Bittinger and his wife to L. P. Dosh, of Scott County, Iowa, reciting a consideration of one hundred dollars, by which they sold, conveyed, and quitclaimed all their "right, title and interest in and to" the premises in controversy. This deed was recorded September 19, 1882.

3. A warranty deed, dated October 27, 1882, of the premises, by L. P. Dosh and his wife to J. R. Dosh, of Guthrie County, Iowa, reciting a consideration of $1513. This deed was recorded November 20, 1882.

4. A warranty deed of the premises, dated June 30, 1883, by J. R. Dosh and his wife to the complainant, James K. O. Sherwood, reciting a consideration of $1800. This deed was recorded April 24, 1885.

The bill alleged that the complainant purchased the premises in question, that is, the southeast quarter of section 31 of the township named, at their full value, in the regular course of business, but that the defendant claimed that, by some secret and unrecorded deed from Bittenger, he had acquired a superior title to the premises, which claim so affected the title of the complainant as to render its sale or disposition impossible, and disturbed him in his right of possession, but of the nature of the claim, except as above stated, he was ignorant. He therefore prayed that the defendant might disclose the nature of his estate, interest and claim in the

premises, that the title of the complainant therein might be quieted, and that the defendant might be decreed to have no estate or interest therein, and be enjoined from asserting any.

The defendant in his answer denied that the complainant had any estate in or title to the premises, and set up that on the 23d day of June, 1870, George L. Bittinger, the patentee of the United States, and his wife, by a warranty deed, conveyed the premises for a valuable consideration to one Guthrie Probyne; that such deed was recorded August 20, 1883; that on the 24th day of August, 1883, Probyne and wife, for a valuable consideration, by a warranty deed, conveyed the premises to the defendant; and that the same was recorded August 28, 1883.

The defendant also, by leave of the court, filed a cross-bill in which he alleged that, at the commencement of the suit and a long time prior thereto, he was the owner in fee simple and in possession of the premises in controversy, and that his ownership of the estate rested upon the following muniments of title, namely: The patent mentioned from the United States of the described premises to Bittinger, dated November 1, 1871; the warranty deed of the premises by Bittinger and wife to Guthrie Probyne, dated June 23, 1870, and the warranty deed of Probyne and wife to the defendant, Theodore J. Moelle. The cross-bill also referred to an alleged tax deed of the premises by the treasurer of Nuckolls County, Nebraska, to one Ferdinand Faust, and a quitclaim from him to L. P. Dosh, but no notice is taken of the tax deed, as it is conceded to be invalid. The prayer in the cross-bill is that the title of the complainant, the defendant in the original bill, may be adjudged perfect and valid.

The answer to the cross-bill set up the various conveyances under which the complainant in the original suit claimed title to the premises, and, whilst admitting that the alleged deed to Probyne from Bittinger and wife, dated June 23, 1870, of the land in controversy was placed on record August 20, 1883, it charged that no such deed of the premises was ever signed, acknowledged or delivered by the grantors named, but averred that the deed signed, acknowledged and delivered by them to

him on the day designated conveyed different property from the premises embraced in the deed recorded August 20, 1883, being part of a different quarter section of the township, viz., the southwest quarter of section thirty-two and not the southeast quarter of section thirty-one, and was recorded June 3, 1871, with this different description. It alleged that subsequent to the record the deed was changed so as to read the southeast quarter of section thirty-one instead of the southwest quarter of section thirty-two, and in such changed condition was recorded August 20, 1883.

The depositions taken in the case established the alteration made in the deed to Probyne as set forth in the answer to the cross-bill. It is to be observed also that the date of the execution of the alleged deed to him by the patentee is more than a year prior to the issue of the patent. The testimony of the complainant Sherwood was taken in the case, and was to the effect that before purchasing the property he examined an abstract of title to it, and found a regular chain of conveyances from the United States to J. R. Dosh; that he also found from the records of certain tax sales a regular chain of conveyances from the grantee of the tax deed to the same party; that no other instrument affecting the title appeared of record; and that he was satisfied that the title was perfect. He then had the land examined, and it was reported to him to be a fair quantity of wild prairie lying vacant and unoccupied, and never had been occupied, and he paid eighteen hundred dollars cash for the property. In answer to a question he stated that at the time he believed he was getting a good title, and had no idea that any such controversy as now exists would arise. The land was unoccupied, the price of the land a reasonable one, and he believed that he was getting a valuable piece of property, with a perfect title, for a fair consideration.

The case was heard at the January term of the Circuit Court, 1888, and on the 9th of March, which was in the same term, a decree was rendered dismissing the bill. At the following term of the court, on the 18th of May, the complainant made a motion for leave to file a petition for a rehearing, representing to the court that, at the hearing of the cause and

when the decree was rendered, it was believed by him that the property in controversy was of sufficient value to give jurisdiction to the Supreme Court of the United States, and that an appeal would lie from the decree, but that since then he had become assured that no appeal would lie by reason of the fact that the premises in dispute were in value less than five thousand dollars. The petition was accompanied by the affidavit of one of the solicitors of the complainant that the allegations were made after careful investigation, and believed to be true. On the 29th of October, which was during the May term, the cause was submitted with the petition for a rehearing, and both were decided on the same day, and a decree rendered in favor of the complainant quieting his title as prayed. 36 Fed. Rep. 478. From that decree the present appeal was taken.

*Mr. N. S. Harwood* and *Mr. John H. Ames* for appellant.

I. The Circuit Court had no jurisdiction to grant or entertain an application for a rehearing, or to vacate or set aside the decree of the 9th of March, 1888, after the lapse of the term at which it was signed and entered. *Cameron* v. *McRoberts*, 3 Wheat. 590; *McMicken* v. *Perin*, 18 How. 507.

II. A grantee in a quitclaim deed is not to be regarded as a purchaser in any sense. *Pleasants* v. *Blodgett*, 32 Nebraska, 427.

The quitclaim deed from Bittenger and wife to L. P. Dosh, does not purport to convey the land, but only "all the right, title and interest" of the grantor "in and to the same." And it contains no covenants of warranty, even of that which it purports to convey. It purports upon its face to convey less than the fee. What interest or title, if any, it did convey was necessarily left to be ascertained by parol, or by other muniments of title. It would not even have prevented the grantor, Bittenger, from acquiring the title of his former grantee, Probyne, and setting it up adversely to his own grantee by quitclaim, L. P. Dosh. This point was expressly ruled by this court in *Hanrick* v. *Patrick*, 119 U. S. 156.

See also *White* v. *Brocaw*, 14 Ohio St. 339, 343; *Adams* v. *Ross*, 1 Vroom, (30 N. J. Law,) 505, 509; *S. C.* 82 Am. Dec. 237; *Blanchard* v. *Brooks*, 12 Pick. 47; *Brown* v. *Jackson*, 3 Wheat. 449, 452; *Oliver* v. *Piatt*, 3 How. 333; *May* v. *Le Claire*, 11 Wall. 217.

*Mr. C. S. Montgomery* for appellee.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

The appellant asks for a reversal of the decree below on two grounds: *first*, that the petition for a rehearing was allowed and a rehearing had after the adjournment of the court for the term in which the original decree was rendered; and *second*, that the decree as finally rendered was against the settled law as to the effect of the quitclaim deed through which the complainant claims.

As a general thing, the jurisdiction of a court over its decrees terminates with the close of the term at which they were rendered. An exception to this doctrine is allowed by the 88th rule in equity, in cases where no appeal lies from the decree to the Supreme Court of the United States. It was on that ground that the motion was made for leave to file the petition for a rehearing in this case, and the allegations of the insufficiency of the amount involved, as the reason that no appeal from the decree would lie, does not appear to have been controverted by the defendant, but to have been conceded as true. The petition was, therefore, properly allowed; and, the case being submitted with such petition, there was no error in the court's considering its merits on the legal propositions presented. Although the appellant has by affidavits since filed shown that the amount involved exceeds the sum of five thousand dollars, it is too late for him on that account to object to the rehearing granted. His concession, upon which the petition was heard, cannot now be recalled. He should have shown that the land in controversy was sufficient at the time the motion was argued, instead of conceding its insufficiency as alleged.

Of the merits of the decree rendered in favor of the com-

plainant and sustaining his title, we have no doubt. His title is traced directly from the patentee of the United States, by various intermediate conveyances. The quitclaim by him to Dosh, bearing date on the 22d of August, 1882, was executed while the title still remained in him. The deed to Probyne, bearing date, as it would seem, prior to the issue of the patent, and on which the defendant relies, does not cover the premises in controversy, but only property situated in a different section of the township. Even if it be conceded that the parties intended that the conveyance should embrace the premises in controversy, they did not carry out their intention, and in its original condition the deed was placed on record and there allowed to remain, giving notice to all parties interested in section thirty-one of township number three that the conveyance to Probyne of June 23, 1870, did not affect them. The change in the description of the property, made after the delivery of the deed to the grantee and its record in the register's office of the county, did not give operation and force to the deed with the changed description as a conveyance of the premises in controversy. An alteration in the description of property embraced in a deed, so as to make the instrument cover property different from that originally embraced, whether or not it destroys the validity of the instrument as a conveyance of the property originally described, certainly does not give it validity as a conveyance of the property of which the new description is inserted. The old execution and acknowledgment are not continued in existence as to the new property. To give effect to the deed as one of the newly described property it should have been reëxecuted, reacknowledged and redelivered. In other words, a new conveyance should have been made.

But if the deed as altered in its description of the property conveyed be deemed valid as between the parties from the time of the alteration, though not reëxecuted, it could not take effect and be in force as to subsequent purchasers without notice, whose deeds were already recorded, but as to them, by the statute of Nebraska, it was void. The statute of that State upon the subject is as follows:

"All deeds, mortgages and other instruments of writing which are required to be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for record, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice, whose deeds, mortgages and other instruments shall be first recorded; *Provided*, That, such deeds, mortgages or instruments shall be valid between the parties." Sec. 16, c. 73, Compiled Stats. of Neb. 1891, p. 647.

The form of the quitclaim to Dosh on the 22d of August, 1882, did not, therefore, prevent the passing of the title of Bittinger to the grantee. Until then the title was in him. The deed previously executed to Probyne, if effectual for any purpose when it was altered without reëxecution, was inoperative as against the grantee in the quitclaim by force of the above statute.

The doctrine expressed in many cases that the grantee in a quitclaim deed cannot be treated as a *bona fide* purchaser does not seem to rest upon any sound principle. It is asserted upon the assumption that the form of the instrument, that the grantor merely releases to the grantee his claim, whatever it may be, without any warranty of its value, or only passes whatever interest he may have at the time, indicates that there may be other and outstanding claims or interests which may possibly affect the title of the property, and, therefore, it is said that the grantee, in accepting a conveyance of that kind, cannot be a *bona fide* purchaser and entitled to protection as such; and that he is in fact thus notified by his grantor that there may be some defect in his title and he must take it at his risk. This assumption we do not think justified by the language of such deeds or the general opinion of conveyancers. There may be many reasons why the holder of property may refuse to accompany his conveyance of it with an express warranty of the soundness of its title or its freedom from the claims of others, or to execute a conveyance in such form as to imply a warranty of any kind even when the title is known

to be perfect. He may hold the property only as a trustee or in a corporate or official character, and be unwilling for that reason to assume any personal responsibility as to its title or freedom from liens, or he may be unwilling to do so from notions peculiar to himself; and the purchaser may be unable to secure a conveyance of the property desired in any other form than one of quitclaim or of a simple transfer of the grantor's interest. It would be unreasonable to hold that, for his inability to secure any other form of conveyance, he should be denied the position and character of a *bona fide* purchaser, however free, in fact, his conduct in the purchase may have been from any imputation of the want of good faith. In many parts of the country a quitclaim or a simple conveyance of the grantor's interest is the common form in which the transfer of real estate is made. A deed in that form is, in such cases, as effectual to divest and transfer a complete title as any other form of conveyance. There is in this country no difference in their efficacy and operative force between conveyances in the form of release and quitclaim and those in the form of grant, bargain and sale. If the grantor in either case at the time of the execution of his deed possesses any claim to or interest in the property, it passes to the grantee. In the one case, that of bargain and sale, he impliedly asserts the possession of a claim to or interest in the property, for it is the property itself which he sells and undertakes to convey. In the other case, that of quitclaim, the grantor affirms nothing as to the ownership, and undertakes only a release of any claim to or interest in the premises which he may possess without asserting the ownership of either. If in either case the grantee takes the deed with notice of an outstanding conveyance of the premises from the grantor, or of the execution by him of obligations to make such conveyance of the premises, or to create a lien thereon, he takes the property subject to the operation of such outstanding conveyance and obligation, and cannot claim protection against them as a *bona fide* purchaser. But in either case if the grantee takes the deed without notice of such outstanding conveyance or obligation respecting the property, or notice of facts which,

if. followed up, would lead to a knowledge of such outstanding conveyance or equity, he is entitled to protection as a *bona fide* purchaser, upon showing that the consideration stipulated has been paid and that such consideration was a fair price for the claim or interest designated. The mere fact that in either case the conveyance is unaccompanied by any warranty of title, and against incumbrances or liens, does not raise a presumption of the want of *bona fides* on the part of the purchaser in the transaction. Covenants of warranty do not constitute any operative part of the instrument in transferring the title. That passes independently of them. They are separate contracts, intended only as guaranties against future contingencies. The character of *bona fide* purchaser must depend upon attending circumstances or proof as to the transaction, and does not arise, as often, though, we think, inadvertently, said, either from the form of the conveyance or the presence or the absence of any accompanying warranty. Whether the grantee is to be treated as taking a mere speculative chance in the property, or a clear title, must depend upon the character of the title of the grantor when he made the conveyance: and the opportunities afforded the grantee of ascertaining this fact and the diligence with which he has prosecuted them, will, besides the payment of a reasonable consideration, determine the *bona fide* nature of the transaction on his part.

In the present case every available means of ascertaining the character of the title acquired, both at the time of his own purchase and at the time the purchases of his predecessors in interest were made, were pursued by the complainant. When he looked at the records of the county where the property was situated, he saw that the only deed executed by the patentee, the original source of title, was for property other than the premises in controversy. No mere speculative investment in the chance of obtaining a good title could therefore properly be imputed to him.

*Decree affirmed.*