On Rehearing.
 

 ROGERS, J.
 

 As stated in our original opinion, this is a jactitation suit involving section 83, township 14, south, range 23 east, containing. 372 acres, in Jefferson parish. Plaintiff asserts ownership of the property by virtue of an alleged open, notorious, and undisputed possession thereof for more than ten years under a title translative of property. Defendants city of New Orleans, Board of Administrators of the Tulane Educátional Fund, and the Board of Administrators of the Charity Hospital deny plaintiff’s alleged ownership and possession, assert title in themselves, and specially plead the prescriptions of five and ten years.
 

 On the original hearing, following our decision in the suit by the present plaintiff
 
 *907
 
 against the Louisiana Land & Exploration Co. (La. Sup.) 132 So. 499,
 
 [1]
 
 rendered at the same time, we found that plaintiff’s prescriptive-title was insufficient to vest title in him, since the sale on which the prescription was based was only of the right, title, and interest of the vendor in the property conveyed. Our finding in this respect was predicated on certain early decisions by this court. Upon the reconsideration of the case, our attention was directed, for the first time, to the rule announced in Read v. Hewitt, 120 La. 288, 45 So. 143, in which the earlier cases were reviewed, that the sale of a person’s right, title, and interest in real property is sufficient to support the prescription of ten years acquirenda causa. We were also shown that the same rule prevails in the federal jurisprudence. See Moelle v. Sherwood, 148 U. S. 21, 13 S. Ct. 426, 428, 37 L. Ed. 350.
 

 We think that the decision in Read v. Hewitt states the correct principle and should be adhered to. The reasoning of Mr. Justice Field in Moelle v. Sherwood, supra, is sound and amply supports the rule, viz.:
 

 “The doctrine expressed in many cases, that the grantee in a. quitclaim deed cannot be treated as a bona fide purchaser does not seem to rest upon any sound principle. It is asserted upon the assumption that the form of the instrument, — that the grantor merely releases to the grantee his claim, whatever it may be, without any warranty of its value, or only passes whatever interest he may have at the time, — indicates that there may be other and outstanding claims or interests which may possibly affect the title of the property; and therefore it is said that the grantee, in accepting a conveyance of that kind,' cannot be a bona fide purchaser, and entitled to protection as such, and that he is in fact thus notified by his grantor that there
 
 may
 
 be some defect in his title, and he must take it at his risk. This assumption we do not think justified by the language of such deeds or the general opinion of conveyancers. There- may be many reasons why the holder of property may refuse to accompany his conveyance of it with an express warranty of the soundness of its title, or its freedom from the claims of others, or to execute a conveyance in such form as to imply a warranty of any kind, even when the title is known to be perfect. He may hold the property only as a trustee, or in a corporate or official character, and be unwilling, for that reason, to assume any personal responsibility as to its title or freedom from liens, or he may be unwilling to do so from notions peculiar to himself; and the purchaser may be unable to secure a conveyance of the property desired in any other form than one of quitclaim, or of a simple transfer of the grantor’s interest. It would be unreasonable to hold that, for his inability to secure any other form of conveyance, he should be denied the position and character of a bona fide purchaser, however, free, in fact, his conduct in the purchase may have been
 
 from any imputation of
 
 the want of good faith. In many parts of the country a quitclaim, or a simple conveyance of the grantor’s interest, is the common form in which the transfer of real estate is made. A deed in that form is in such cases as effectual to divest and transfer a complete title as any other form of conveyance.”
 

 In view of our conclusion on this phase of the case, it becomes necessary for us to consider and determine some of the other issues raised by the parties. We will proceed to do so.
 

 
 *909
 
 As shown in our original opinion, the city of New Orleans and the Boards of Administrators of the Charity Hospital and Tulane University acquired the property in dispute by an act of donation from the late Edward N. AYisner on August 4, 1914, and the title of Wisner, the donor, is a clear and uninterrupted one from the United States through the state of Louisiana and the board of commissioners of the Lafourche Basin levee district. This title is still in the defendants referred to, unless they have lost it to plaintiff by the prescription of ten years acquirenda causa.
 

 The record fairly bristles with the technical objections of the parties to the admission of the documentary evidence. All these objections, with one exception, relate to the form adopted for the proving of the documents and not to their substance. Conceding that some of the objections are well founded, nevertheless it would serve no useful purpose to maintain them, since such a ruling could only result in the remanding of the case in order to remedy the purely technical defects complained of; thus prolonging the litigation without, in any manner, affecting the rights of the parties litigant. The objection going to the substance of one of the documents is plaintiff’s collateral attack by way of objection on the act of donation made by Edward AVisner to the city of New Orleans and the other beneficiaries therein named. The grounds of this objection are that the donation does not comply with the provisions of Act No. 124 of 1882 permitting donations to be made to trustees for educational, charitable, or literary purposes; that it violates Civ. Code, art. 1520 et seq., relative to substitutions and fidei eommissa, and Civ. Code, art. 2404, prohibiting the husband from donating the immovables of the marital community by gratuitous title, except to establish the children of the marriage; and that the donation was not formally accepted by the donees. The objection is untenable and was properly overruled by the court below. Plaintiff cannot question the validity of the donation by Wisner to the defendants. That is a matter between the donor and those claiming under him and the donees.
 

 Plaintiff acquired the property in controversy here from the Ottawa Banking & Trust Company, acting as trustee in bankruptcy of the Jefferson Land Company, bankrupt, under a decree of the United States District Court for the Northern District of Illinois. The deed is dated June 14, 1919 and was registered in the records of Jefferson parish on July 9, 1919. The lands conveyed by the deed consist of four parcels, viz.: (1) A tract of land known as the “Carter Plantation”; (2) a tract of land known as the “Pecan Grove Plantation”; (3) sections 83, 84, and 102 of township 14 S., range 23 E., section 83 being in dispute in this suit and sections 84 and 102 being in dispute in the suit of the plaintiff against the Louisiana Land & Exploration Company (La. Sup.) 132 So. 499
 
 [1]
 
 ; and (4) two tracts of land known as the “Brown” or “Christmas Plantation.”
 

 This suit was filed February 8, 1919, which was less than ten years after the execution and recordation oí the deed from the trustee of the Jefferson Land Company, bankrupt. Hence, plaintiff cannot rest his plea of prescription on this deed, but must rely on a quitclaim deed executed by G. H. T. Shaw in Mexico City on September 23, 1909. This deed was in the form of an act under private signature, acknowledged before
 
 *911
 
 a Consul General In Mexico City, wherein Shaw recited that “for and in consideration of the sum of One Dollar ($1.00) and other valuable considerations to me cash in hand paid” he did sell convey, transfer, “and quitclaim” to the Jefferson Land Company all his right, title, interest, and ownership of whatever nature in and to, first, the Carter Plantation; second, the Pecan Grove Plantation ; and, third, sections 83, 84, and 102, township 14 S., range 23 E., in the Southeastern land district of Louisiana west of the Mississippi river.
 

 The quitclaim deed from Shaw to the Jefferson Land Company was recorded in Jefferson parish on November 12, 1909. At the time of the execution and recordation of this deed, however, the Jefferson Land Company was already the owner and in possession of (he “Carter” and the “Pecan Grove” plantations under a warranty deed from the lawful owner, Old Plantation. Company, Limited, which in turn, had purchased said property from Shaw. Hence the effect of the quitclaim deed from Shaw to the Jefferson Land Company was to transfer to that company only whatever right, title, and interest which he had (which, as a matter of fact was none) in sections 83, 84, and 102.
 

 It is admitted that the rear sections 83, 84, and 102 are what is known as sea marsh. There is no evidence in the record showing that plaintiff’s vendor, the Jefferson Land Company, ever took corporeal possession of these particular lands. Plaintiff, himself, testified in a general and vague way that he took possession of the lands about February 15,. 1918, which was more than a year prior to the date of the execution of the trustee’s deed to him on June 14, 1919, but subsequent to the date he had actually delivered .his check for the purchase price to the trustee. Whether the alleged possession of plaintiff prior to the date of his deed was for himself or for his vendor does not clearly appear. But, be that as it may, plaintiff’s specific acts of possession were performed on the high front ground, referred to in his tdeed as the “Carter,” “Pecan Grove,” and “Brown or Christmas Plantations.” The testimony of plaintiff’s witnesses are all to'the same effect. And running through plaintiff’s testimony as well as his argument in this court is his theory that his possession and control of the three front plantations on the high ground constitutes possession of the three sections of sea marsh lying in the rear. Plaintiff’s testimony as to his tenants, one on the northwest quarter and the other on the southwest quarter of section 83, is not helpful to his case, for, admittedly, these tenants were squatters, who only had knowledge of and recognized plaintiff’s claim of ownership' within the last five years. And the property is being trapped on by lessees of the city of New Orleans since November 20. 1928.
 

 Plaintiff’s actual possession of the front lands embraced in the plantations which the Jefferson Land Company acquired ■from the Old Plantation Company, Limited, cannot support his claim to the constructive possession of the rear lands lying in the sea marsh. The Jefferson Land Company, if it intended to possess and hold the rear lands under a title, was of necessity required to hold them by actual possession under Its quitclaim deed from Shaw, which was a different and independent title from the one from the Old Plantation Company, Limited, under.whieh.it owned and was in actual possession of the front cultivable lands.
 

 The rule is that the possession of the front lands under one title does not extend
 
 *913
 
 to the rear lands held under a different title. Delavigne v. Williamson, 11 La. Ann. 250, citing Kittridge v. Hebert, 9 La. Ann. 154. The rule governs even though the lands be contiguous, since actual possession of a tract of land different from the land of another, though the lands adjoin, is not notice to the other party of any adverse claim to his property.
 

 Our conclusion is that plaintiff has not established the possession of ten years necessary to maintain his plea of prescription acquirenda causa.
 

 The conclusion which we have reached .dispense^ with the necessity of passing upon the defense urged by the Charity Hospital and Tulane University that they are state institutions and, as such, are free from the operation of the laws governing prescription.
 

 Eor the reasons assigned, our original decree is reinstated and made the final judgment in this case. The right is reserved to plaintiff ,to apply for a rehearing.
 

 ST. PAUL, J., concurs in the decree.
 

 [1]
 

 Post, p. 913
 

 [1]
 

 Post, p. 913.