Ellis, J.,
 

 (Dissenting) : A. J. Rabinowitz appealed from a decree in a cause begun by E. D. Keefer and Roma T. Raine against Jacob Edwards, individually and as trustee, his wife Juliana Edwards, Charles E. Sumner, Samuel C. ■Rudine and A. J. Rabinowitz. The relief sought by the suit was that certain claims of title and deeds of Conveyance to the land on which the claims were based be cancelled as a cloud upon the complainants-’ title and an order enjoining the defendants from setting up or asserting any right or title to the lands.
 

 The cause seems to have been decided on amended bill and the answer of Rabinowitz. Decrees
 
 pro confesso,
 
 according to recitations contained in the final decree, were entered against all defendants except Rabinowitz. According to the allegations of the bill and averments of the answer, the lands in question are “wild, unimproved and unoccupied and not in possession of any person or persons, corporation or corporations”. From any allegations to the contrary such has been the status of the lands since 1887 when the Trustees of the Internal Improvement Fund conveyed them to the Florida Southern Railway. -That Corporation conveyed the lands in fee- simple to Jacob ‘Edwards on May 5, 1888, which deed was recorded in October of that year in ■ DeSoto County' where the lands, are located. In 1892 Edwards and wife conveyed to Charles E. Sumner by warranty deed, who- in November, 1916, conveyed by deed to Samuel C. Rudine and he, an unmarried man, conveyed the lands by deed dated August 5, 1925, to Rabinowitz. The conveyances from Edwards to Sumner and from Sumner to Rudine and from the latter to Rabinowitz were not recorded when the complainants
 
 *1736
 
 obtained their deeds of conveyance in July, 1925. No one claims any interest in the land adversely to complainants but the defendant Rabinowitz.
 

 The complainants claim title through mesne conveyances back to Jacob Edwards, who quitclaimed to Leslie N. Wilkie in September, 1902. That deed was recorded in January, 19Q3. Wilkie in 1903 conveyed to John A. Graham, The character of that conveyance is not described. In 1904 Graham conveyed to A. W. Gilchrist, who in 1905 conveyed to E. M. Putnam. The character of those two deeds are not described. In October, 1908, Putnam and wife quitclaimed to W. H. Frazier subject to a mortgage executed by Putnam to Barnes and Jessup Company dated December 8,1905. In March, 1910 Frazier conveyed to Laura J. Putnam and in 1909 Barnes and Jessup Company began proceedings to enforce the mortgage held by it. The cause proceeded to final decree and sale and the Master in Chancery executed a deed to Barnes and. Jessup Company dated September 6, 1910. Thereafter that Corporation, its name having been changed to Southern Naval Stores Company conveyed to Telfair Stockton Company, a corporation, in December, 1913. In 1924 that Corporation and-E. B. Wells, as Receiver for Southern Nayál Stores Company, conveyed to S. F. Coventry. The character of none of the above deeds is described except the quitclaim from Putnam to Frazier in October, 1908, and the Master’s deed to Barnes and Jessup Company. It is alleged, however, that all were duly recorded.
 

 It is alleged that in December, 1924, Coventry by war-' ranty deed conveyed an undivided half interest to Harry N. Helium and by another deed, alleged to be a warranty, conveyed the remaining undivided 'half interest to J. Wesley Coleman and C. O. Coleman. In April, 1925, J. Wesley Coleman quitclaimed his undivided fourth inter
 
 *1737
 
 est to C. 0. Coleman. In July, 1925, Kellum, by warranty deed, conveyed his undivided half interest to E. D. Keefer and Roma T-. Raine, the complainants, and on July '6, 1925, Coleman by warranty deed conveyed an undivided half interest to Keefer and Raine.
 

 It thus appears that the claims of both complainants and defendants originate in a common source, that of a fee simple title in Jacob Edwards, who acquired the lands in May, 1888. The defendant claims through successive conveyances from Edwards and his grantees beginning by warranty deed from him and wife to Sumner in January, 1892. The complainants claim through conveyances ■ of different character: quitclaim deeds, master’s deed and warranty deeds beginning with a quitclaim deed from Edwards to Wilkie in September, 1902, ten years and eight months after Edwards had parted with his title to Sumner.
 

 According to the allegations of the bill, the first war-, ranty deed appearing in the complainants’ line of title was the deed from Coventry to Kellam on December 9, 1924, and to Coleman on the same date each for an individed half interest. Prior to that time the conveyances are described in language somewhat as follows: “By that instrument found of record” in a certain deed book at a certain page the grantor by name 1 ‘ conveyed said lands ’ ’ to the grantee by name. . Then the quitclaim deed from Edwards to Wilkie in 1902 and the quitclaim deed from Putnam to Frazier in October, 1908.
 

 The bill alleges that the ‘ ‘ conveyances ’ ’ to the complainants “were made for good and valuable considerations and without any notice whatever either actual of constructive of the claim of said defendant, A. J. Rabinowitz. ’ ’
 

 It is alleged that the public records did not disclose any “outstanding claims by any person or persons, and at the time your Orators purchased said lands and recorded the
 
 *1738
 
 conveyances thereof, none of said deeds under which the defendant, A. J. Rabinowitz claims, were recorded in Charlotte County, Florida public records, or in any County wherein said land lies, and that your Orators did not have notice of the claims of said- defendants or any one of them or they would not have purchased said lands.” The complainants claim therefore that they are
 
 bona fide
 
 purchasers for a valuable consideration without noticed
 

 The bill alleges that the deed from Edwards to Sumner was recorded on August 28, 1925, at which time the deeds, to Rudine from' Sumner and from Rudine to Rabinowitz, were also recorded.
 

 The Chancellor decreed that the complainants are
 
 bona fide
 
 purchasers of the lands without notice of the claims, of Rabinowitz and his predecessors in title, Sumner and Rudine, and that the complainants are “entitled to the protection of the recording acts as against said prior warranty deed from Edwards to Sumner;” that “said warranty deeds from Edwards to Sumner, from Sumner toRudine, and from Rudine to the defendant Rabinowitz,. are clouds upon the title of the complainants, and should be cancelled as such.” From that decree Rabinowitz appealed.
 

 It is apparent from the foregoing statement that the complainants did not acquire through and by the various conveyances in-their chain of deeds the Edwards title to-the lands because that title- had passed out of him to Sumner more than ten years before the execution of the quitclaim deed by Edwards to Wilkie which is the beginning-of the complainants’ line of conveyances. When the complainants became invested with the title to the land, if ever, and by What pieans to the exclusion of the Edwards-Sumner-Rudine:Rabinowitz title is the question for determination. -
 

 
 *1739
 
 Now, the Edwards-Rabinowitz warranty deeds of conveyance were not recorded until August 28, 1925, more than a month after the warranty deeds from Coleman and Kellum were executed to the complainants and recorded. If the complainants may be said to be “subsequent purchasers for. a valuable consideration and without notice” then no conveyance in the Edwards-Rabinowitz chain of deeds was good or effectual in law or equity. against the complainants because the conveyances were not recorded according to law when complainants became such purchasers. See 5698 Comp. Gen. Laws 1927 (3822 Rev. Gen. Stats., 1920).
 

 This Court.has held that a grantee in a recorded quitclaim deed is not a
 
 l)ona fide
 
 purchaser without notice within the meaning of the recording acts, .that he occupies the same position in respect to an unrecorded prior deed or mortgage as did his grantor. See Show v. Lake, 20 Fla. 656; Fries v. Griffin, 35 Fla. 212; 17 So. R. 66; Black v. Skinner Mfg. Co., 53 Fla. 1090, 43 So. R. 922; Braddy and Hale Fishery Co. v. Thomas, 93 Fla. 326, 112 So. R. 55.
 

 This doctrine, which is settled in this jurisdiction, means simply that the; grantee in a quitclaim deed is • estopped from asserting that he is a. bona fide purchaser without notice of the lands described'.in the quitclaim deed under which he claims.
 

 A party claiming title under one who is estopped will also be bound by the estoppel. See Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 So. R. 599; Watkins v. Emmerson, 88 Fla. 86, 102 So. R. 10.
 

 It follows from the doctrines just quoted that the recording statute, Sec. 5698 Comp. Gen. Laws 1927, (3822 Rev. Gen. Stats. 1920)
 
 supra,
 
 affords no protection to one who claims title to land under a quit claim deed, that is a mere deed of release. In other words, such a claimant
 
 *1740
 
 is as completely charged with notice of an outstanding title, an unrecorded deed conveying the title to another, as if that conveyance had been duly recorded when the claimant acquired his deed*of release or quitclaim to the premises.
 

 The recording statute does not invalidate an unrecorded deed of conveyance as between the grantor and grantee. The title passes by such a conveyance and in turn is acquired by a subsequent grantee of such grantee and so on by each purchaser of the land. The statute affords protection only to subsequent purchasers for a valuable consideration and without notice of the former unrecorded conveyances, but as a claimant under a quitclaim deed is not a subsequent purchaser for a valuable consideration and without notice of such unrecorded conveyances of the land it follows that the recording statute affords no protection to him.
 

 A grantor can convey no greater estate than he has or in which he has an alienable title or interest, therefore a deed from a person without title or interest which he may convey is inoperative as a conveyance and the grantee under a release and quitclaim will take nothing where the grantor has no interest which he can convey. So a deed is inoperative where the grantor has previously conveyed his entire title. See Rollo v. Pool, 280 Ill. 607, 117 N. E. R. 756; Beatson v. Bowers, 174 Ind. 601, 91 N. E. R. 922; Litchfield v. Ferguson, 141 Mass. 97, 6 N. E. R. 721; Nolen v. Powell, (Ala.) 64 So. R. 566; Sims v. Stovall, 127 Ark. 186, 191 S. W. R. 954; McMahon v. Stratford, 83 Conn. 386, 76 Atl. R. 983; Dailey v. Springfield, 144 Ga. 395, 87 So. E. R. 479, Ann. Cas. 1917 D 943; Potter v. Long, 217 Mo. 607, 117 S. W. R. 724; Williams v. Conroy, 35 Colo. 117, 83 Pac. R. 959; Gray v. Williams, 130 N. C. 53, 40 So. E. R. 843; Fowler v. Will, 19 S. D. 131, 102 N. W. R. 598, 117 Am. St. R. 938, 8 Ann. Cas. 1093.
 

 
 *1741
 
 While it is true that the title to real property may be as effectually conveyed or transferred by a quitclaim deed as by any other form of conveyance it conveys only whatever title or estate the grantor may have had in the land at the time it is given. See Moelle v. Sherwood, 148 U. S. 21, 13 Sup. Ct. R. 426, 37 L. Ed. 350; Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703; see also 18 C. J. 313.
 

 Only such title or interest as the grantor possesses at the time, of giving a quitclaim will pass thereby. Bryan v. Eason, 147 N. C. 284, 61 So. E. R. 71; East v. Davis, (Mo.) 204 S. W. R. 402; Shelton v. Horrell, 232 Mo. 358, 134 S. W. R. 988; Pellow v. Artic Iron Co., 164 Mich. 87, 128 N. W. R. 918; 47 L. R. A. (N. S.) 573, Ann. Cas. 1912 B 827; Garrow v. Toxey, 171 Ala. 644, 54 So. R. 556.
 

 Where a grantor therefore has no interest in the land to convey, his quitclaim deed is regarded as merely a release or formal disclaimer notwithstanding the use of additional words of grant or of warranty. See Frink v. Darst, 14 Ill. 304, 58 Ann. Dec. 575; Bruce v. Luke, 9 Kan. 201, 12 Am. R. 491; Reynolds v. Shaver, 59 Ark. 299, 27 S. W. R. 78, 43 A. S. R. 36, 8 R. C. L. 927.
 

 When therefore Edwards made a quitclaim deed to Wilkie in September, 1902, no title passed to Wilkie because Edwards had previously conveyed the same to Sumner in 1892, and Wilkie was not protected by the recording statute against the unrecorded deed to Sumner. See Snow v. Lake,
 
 supra;
 
 Fries v. Griffin,
 
 supra;
 
 Fowler v. Will,
 
 supra.
 

 In the case of Moelle v. Sherwood,
 
 supra,
 
 Mr. Justice Field, speaking for the Supreme Court of the United States, qualified materially the rule which obtains in this State, that is that a grantee in a quitclaim deed is not a subsequent purchaser for a valuable consideration without notice within the meaning of the recording statute, but
 
 *1742
 
 the fact remains that the rule which obtains in this State is a rule of property and has received the consistent and unvarying approbation of this Court. It is a rule of property which has obtained in-this jurisdiction for many generations and as such there is no more of hardship in it than any other rule for the conveyance of lands, as, for instance, that the deed shall be executed under seal; or that there shall be- two witnesses to its execution; or that it must contain words of limitation which before the statute so long obtained in this State. See Sec. 5669 Comp. Gen. Laws 1927.
 

 Mr. Justice Field, in the Moelle-Sherwood case, expressed the view that the rule that a grantee in a quitclaim deed cannot be treated as a bona fide purchaser does' not seem to rest upon any sound principle and- proceeded to point out that there may be many reasons why the holder of property may refuse t'o accompany his conveyance of it with an express warranty of the soundness of its title or its freedom from the claims, of others or to execute a conveyance in such form as to imply a warranty of any kind even when the title is known to be perfect. He then refers to situations illustrative of his views. It is however upon those very grounds and for those very .reasons that the grantee in a quitclaim deed is by the rule obtaining in this State and many other jurisdictions
 
 ipso facto
 
 put upon notice of possible defects in the title which he seeks to acquire. It is because he knows that the grantor is unwilling to convey the title in the usual way by an ordinary deed of conveyance of the land but agrees to convey only his right, title or interest therein, whatever it may be, that puts him, the grantee in such a conveyance, upon notice of outstanding titles and destroys the element of bona tides and lack of notice within the meaning of the statute.
 

 
 *1743
 
 The case of United States v. California
 
 &
 
 Oregon Land Company, 148 U. S. 31, 37 L. Ed. 354, 13 Sup. Ct. R. 458, announced the doctrine that a “purchaser holds under a quitclaim deed does not of itself prevent his being a bona fide purchaser. ’ ’ The Court, speaking through Mr. Justice Brewer, disaffirmed previous expressions to the contrary. Those cases were decided in 1893 but the case of Black v. Skinner Mfg. Co., 53 Fla. 1019, cited herein, was decided in 1907 and Braddy and Hale Fishery Co. v. Thomas,
 
 supra,
 
 was decided in 1927. So that this jurisdiction continues to follow the rule notwithstanding a criticism of it by the Federal Supreme Court.
 

 An investigation of the rule and the reason for it only leads the investigator to the conclusion • that the various jurisdictions are in disagreement. Whatever may be- the cause of such disagreement the statutes and their peculiar wording may in a large part be responsible for the conflict of opinion. Even so, that is but a demonstration that the rule is merely an arbitrary rule of property and is sustained by reasoning as cogent as that by which the contrary rule is upheld. In those jurisdictions where it is held that the grantee in a quitclaim deed takes the property over grantees in prior unrecorded deeds and is thus entitled to the protection of the recording statute the argument in support of the rule rests upon the assumption that such grantee believes his grantor to have title, or some alienable interest in the land; that the grantee has paid a valuable consideration for it; that he is a purchaser in good faith and without notice from those having an apparent title to the land or that believing his vendor to be the owner he naturally supposes that he' has obtained all there is to-sell and should not be made to suffer merely because -of' the inartistic-manner in which the deed to him appears-' to be drawn. Campbell v. Laclede Gas Co., 84 Mo. 352;
 
 *1744
 
 Strong v. Whybark, 204 Mo. 341, 102 S. W. R. 968; Ellison v. Torpin, 44 W. Va. 414, 30 So. E. R. 183; Woody v. Strong, (Tex. Civ. App.) 100 S. W. R. 801.
 

 An interesting note on the subject may be found in 8 Ann. Cas.
 
 1095.
 
 Where one takes a quitclaim deed he does so voluntarily. There is no compulsion upon him to accept it. If he pays his grantor full value for the land and consents to accept a conveyance not of the land by the usual method but agrees to accept a conveyance of only such right and interest that the seller may have it cannot be any hardship upon him if the rule of property which obtains warns him that his quitclaim deed is not good as a conveyance of the land against a prior unrecorded deed by which the land and title may have been conveyed to another. The very language of the deed under which he claims, the conversations between him' and his grantor' preliminary to the execution of the deed, the latter’s refusal to convey the land but only such interest as he may then have in it, all constitute a warning to the purchaser at least sufficient to put him upon inquiry.
 

 In the State of Oregon the rule turns upon the question of possession. If the grantee under the quitclaim deed takes possession from the common grantor it seems that he will acquire a title good as against a prior unrecorded conveyance. American Mtg. Co. v. Hutchinson, 19 Ore. 334, 24 Pac. R. 515.
 

 If possession is not given the rule is otherwise. Baker v. Woodward, 12 Ore. 3, 6 Pac. R. 173.
 

 In the case at bar there is no question of possession. There is no allegation in the bill that the complainants have ever been in possession. The allegation is that the “said lands are wild and unimproved and not in the posses^ sion of any person whomsoever”.
 

 
 *1745
 
 In the case of Rabinowitz v. Houk, 100 Fla. 44, 129 So. R. 501, the rule which for so long has obtained in this State was seemingly disaffirmed. The distinction was drawn between an immediate grantee under a quitclaim deed who was held to be not a “bona fide purchaser without notice” and a purchaser without notice, under a warranty deed from one in whose chain of conveyances there is a quitclaim deed. The doctrine is announced that a ‘ ‘ purchaser for value without notice who takes by warranty deed in good faith after a search of the record is presumptively a bona fide purchaser”.
 

 There are some material differences in point of fact however between that ease and the one at bar. Houk, the complainant, claimed under a warranty deed from Edge in 1924, who received title from Manatee Naval Stores Company by warranty deed in 1919. That Corporation acquired title from Young and Robertson in 1903, Young having obtained a deed to an undivided half interest from Robertson in 1901 who acquired title from Wilkie by warranty deed in 1901. Wilkie acquired title by two deeds, one from R. J. Edwards, who acquired title by a tax deed in October, 1892, and from Jacob Edwards, widower, in 1900; the latter’s deed was not alleged to be a warranty deed. No action had been brought to set aside the tax deed which therefore had become indisputable.
 

 The Rabinowitz title was as follows: Rabinowitz from Rudine in 1925; Rudine from Sumner in 1916; Sumner from Jacob Edwards and wife in January, 1892, the latter being a warranty deed; the others “fee simple deeds”, as the opinion states. The Rabinowitz deeds in that chain of title were not recorded until after Houk had acquired a deed and the deeds in his line of conveyances were all recorded.
 

 
 *1746
 
 The record does not show that the Houk title originated in a quitclaim deed from Jacob Edwards and does show that there was a title originating in a tax deed to Robert J. Edwards in 1892 which had become indisputable. There was not a quitclaim deed in the line of conveyances from Edwards to Houk, unless it was the deed from Jacob Edwards, widower, to Wilkie in October, 190Q, which the opinion merely states was “not alleged to be a warranty deed”.
 

 Mr. Justice Brown, in an exhaustive opinion in the ease, reviewing the doctrine which has so long obtained in this. State said that “This Court has long recognized the doctrine that the immediate grantee under a purely quitclaim deed, a mere deed of release, obtains just such title as his vendor had, and subject to the same defenses, and is not a bona fide- purchaser without notice within the meaning-of the recording acts”, citing authorities.
 

 The learned justice then proceeds to discuss the rule as' it obtains in other jurisdictions where the contrary rule obtains and concludes that if the rule as it obtains: in this State “were permitted to be extended it would tend directly to impair the selling value of all such property, and would operate to hinder improvements; and as it is the policy of the law that titles to real estate should become matters of certainty as far as possible a person buying under such circumstances is presumptively' a bona, fide purchaser and takes the title free from outstanding-equities of which he had no notice”.
 

 Now the tax deed in the Houk title post dated the deed from Edwards to Sumner which was in January, 1892,. therefore the bill to remove cloud based upon the tax title would have been properly sustained against persons- asserting title acquired subsequently from Edwards’ grantees, such claim of title being acquired after the tax deed and
 
 *1747
 
 asserted against it. See Stuart v. Stephanus, 94 Fla. 1087, 114 So. R. 767.
 

 If however it was the purpose of this Court in Rabinowitz v. Houk,
 
 supra,
 
 to modify the rule by distinguishing between an immediate grantee under a quitclaim deed, and one claiming title under a warranty deed from a grantor in whose chain of title- there is ‘ ‘ remote quitclaim deed”—to state the proposition differently—if it was the purpose of the court in the Rabinowitz-IIouk ease
 
 supra
 
 to modify the rule that a party claiming title, under one who is’ estopped will also be bound by the estoppel and that a grantor can convey no greater estate than he has or in which he has an alienable title or interest, by the qualification that if the last grantee claiming under a warranty deed as a conveyance of the land pays a valuable consideration for it and buys in good faith after examining the record and' finding no outstanding title in another he will be protected by the recording act, Section 5698 Comp; Gen. Laws 1927, .and he held to be a subsequent purchaser for a valuable consideration .and without notice it should be definitely stated what is meant by the term “remote” in the phrase “remote quitclaim deed.” Is the term one of numerical or temporal significance? Does it have reference to remoteness in point of time or number of conveyances?
 

 It is easily imaginable that there may be a chain of deeds originating in a quitclaim consisting of six or more transfers separated in point of time by not more than twenty-four hours between the original quitclaim and the last warranty deed, or by a period of twenty years or more as in that case between the presumed quitclaim to Willde in 1902 and the deed to complainant in 1925.
 

 If the matter of time alone determines the applicability of the rule as modified, there would be difficulty in
 
 *1748
 
 deciding at just what period of remoteness from the last deed the modified rule would apply. If number of conveyances alone would determine the matter of remoteness it should be stated how many conveyances back of the last would bring the modified rule into effect. If both elements should combine to determine when a quitclaim deed is remote in the line of conveyances the modified rule would by no means be certain in its application depending upon the circumstances of each case and the individual views of the particular judge whose duty it would be to determine the applicability of the rule. That- condition would not promote certainty in a very high degree in the matter of titles'’to real estate and their transfer.
 

 I think that ’ the Rabinowitz-Houk case,
 
 supra,
 
 is not controlling in this case and that the rule of property as heretofore and now existing in this State should be maintained. See Myers v. Van Buskirk, 96 Fla. 704, 119 So. R. 123.
 

 The decree appealed from should therefore be reversed with instructions to dismiss the bill or proceed in accordance with the views expressed in this opinion.
 

 Buford, J., concurs.