No. 4102

Second Circuit

LIEBER v. WATT
(GENERAL MOTORS ACCEPTANCE CORP., Intervener)

(February 16, 1932. Opinion and Decree.)
(March 16, 1932. Rehearing Refused.)

Madison & Madison, of Monroe, attorneys for plaintiff, appellee.

Paul Fink, of Monroe, attorney for intervener, appellant.

STEPHENS, J. The plaintiff, L. L. Lieber, brought this suit to recover rent from his tenant, the defendant, T. E. Watts. In aid thereof, he provoked the issuance of a writ of provisional seizure and caused to be seized thereunder a certain refrigerating machine together with other property found on the leased premises.

The General Motors Acceptance Corporation intervened in the suit, alleging that the defendant was indebted to it for a portion of the purchase price of the refrigerating machine, which indebtedness was represented by a promissory note and secured by a chattel mortgage on the machine; that said chattel mortgage was filed and recorded prior to the time the machine in question was placed on the leased premises; and that therefore its vendor's lien and chattel mortgage was superior in rank to the plaintiff's lessor's lien, and that it should be so decreed, and that it should be paid by preference out of the proceeds of the sale of said machine.

A trial of the case resulted in a judgment rejecting the intervener's demand, in so far as it sought recognition of its vendor's lien and chattel mortgage as superior to plaintiff's lessor's lien. From that judgment the intervener appeals.

We find the following pertinent facts as disclosed by the record: That the chattel mortgage was in notarial form and regular upon its face; that it was signed by the defendant, the mortgagor, and by one of the attesting witnesses, on the leased premises; that it was signed by the mortgagee, the Monroe Refrigerating Company, and the other attesting witness, in the office of the mortgagee, and by the notary public at his office at another time and place, the mortgagor, mortgagee, and the witnesses not being present; that it was executed in the manner described, filed and recorded on the public records before the mortgaged property was moved on the leased premises; and that the plaintiff lessor had no actual notice or knowledge of the existence of the chattel mortgage until some time after the property had been placed on the leased premises.

Section 2 of Act No. 198 of 1918 provides:

"* * * In order to affect third persons without notice, said instrument must be passed by notarial act and the original or a certified copy thereof shall be recorded in the office of the Recorder of Mortgages in the parish where the property shall then be situated, and also in the parish in which the mortgagor is a resident."

Section 4 of the same act provides:

"* * * that every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto."

As we have concluded that the chattel mortgage was executed and recorded prior to the placing of the refrigerating machine in the leased premises, it necessarily follows that the lessor's privilege, having subsequently arisen, was inferior in rank to the chattel mortgage, unless it be shown that the plaintiff lessor was without notice, actual or constructive, of the existence of the mortgage.

Further, as we have concluded as a fact, and that conclusion is amply supported by the evidence, that the lessor had no actual knowledge or notice of the existence of the chattel mortgage, the issues in the case are reduced to the sole question of whether the lessor was given constructive notice by the recordation of the mortgage.

The chattel mortgage as recorded was in the form of a notarial act, regular in every particular upon its face; but its authenticity was successfully attacked by the plaintiff lessor. It was not executed before a notary, or other officer authorized to exercise such functions, in the presence of two witnesses, and was therefore not a notarial act. Civ. Code, art. 2234.

It is contended by the intervener that the proper recordation of an instrument, regardless of its authenticity, is notice to the world. That contention, at least, as applied to the specific question here presented, is not well founded. The statute provides that in order to affect third persons. without notice, a chattel mortgage must be passed by notarial act, and that said act must be recorded in the office of the recorder of mortgages. There are therefore two essential requirements necessary to constitute effective, constructive notice: The act must be of a certain character, and that act, of that definite character, must be recorded in the mortgage records. In order to convey constructive notice, both requirements must be complied with.

In the instant case neither requirement was complied with. The chattel mortgage was not a notarial act in fact, but only in form. The recordation which was effected was not the recordation of a chattel mortgage passed by notarial act.

The essential requirements expressed by the statute to affect third persons with constructive notice of the existence of a chattel mortgage are exclusive. "Expressio unius est exclusio alterius." Where a statute directs the performance of a certain thing in a particular manner, it forbids by implication every other manner of performance. It was therefore not sufficient, for the purpose of affecting the lessor with constructive notice, to pass a chattel mortgage by private act and cause it, as thus executed, to be recorded.

It was held by this court in the case of Union Securities Co. v. Neal, Watts, Third Opponent, 9 La. App. 494, 121 So. 316, that a chattel mortgage, under private signature, duly recorded, did not affect third persons without actual notice. That case is identical with this, in that the chattel mortgage was not in fact passed by notarial act, but is unlike the present case in that the mortgage did not conform to the requirements of a notarial act upon its face.

However, the identical question here presented was answered by the Orleans Court of Appeal in Dainello v. McCoy, 15 La. App. 358, 131 So. 608, 609, in the following language:

"We find it unnecessary to consider the question of fact which is thus presented for the reason that the record leaves us no other alternative than to hold that, under the chattel mortgage laws of this state, the document purporting to be a chattel mortgage by notarial act, and on which intervener's claim is based, is nothing more than an act under private signature and that, thus, in the absence of proof that the landlord had actual knowledge of its existence, he cannot be bound thereby."

In Dainello v. McCoy, as in the instant case, the chattel mortgage was recorded and was regular in form, but it was not in fact passed by notarial act.

It is contended by the intervener that the plaintiff necessarily had knowledge of the existence of the chattel mortgage pri-

or to the institution of the suit, and that therefore his lessor's privilege was inferior in rank to the lien resulting from the chattel mortgage. That contention is not in point. The question here is whether the plaintiff acquired actual knowledge or was constructively notified of the existence of the chattel mortgage before the mortgaged property was placed on the leased premises. If he acquired such knowledge, or was chargeable with such notice at such time, his lessor's lien and privilege must be classified as "arising subsequently" and inferior in rank to the chattel mortgage; but, on the contrary, if he had no such notice, actual or constructive, at such time, the chattel mortgage, and the lien incident thereto, which is superior in rank only to liens and privileges subsequently arising, did not exist, in so far as they affected him, and the refrigerating machine was placed on the leased premises and the lessor's lien attached thereto while it was unincumbered by mortgage.

The fact that plaintiff learned after the refrigerating machine had been placed on the leased premises that the chattel mortgage existed is clearly irrelevant and immaterial, as it existed with reference to him only from the time of the acquisition of such knowledge, and as his lessor's lien had already attached to the property in question at the time he acquired such knowledge, it could not properly be designated as a lien or privilege subsequently arising.

The intervener relies on the case of Shevnin v. Grimmer et al., 10 La. App. 393, 119 So. 894, 896, as authority for its position here. In that case this court in its opinion stated that the lessor must have had actual knowledge of the existence of the chattel mortgage because he filed the suit. The question as to whether he acquired that knowledge prior or subsequent to the time of placing the mortgaged property on the leased premises was not discussed. The mere expression that the lessor had knowledge of the existence of the chattel mortgage because he filed the suit, a self-evident fact, is dehors the issue, which was the relative rank of the lessor's lien and privilege and the chattel mortgage lien, which rank could only be affected in the absence of constructive notice, by knowledge of the lessor of the existence of the chattel mortgage at the time or before the mortgaged property was placed on the leased premises.

The mortgage in question in the Shevnin case was a private act duly recorded. This court with reference to the effect of its recordation used the following language:

"If plaintiff (the lessor) did not have actual notice of the existence of the mortgage, he must be held to have had constructive notice of it arising from its recordation, and therefore it affected him."

The statement as thus made is clearly in conflict with and cannot be reconciled with the decisions in the Union Securities Company and Dainello cases, supra, nor the conclusions herein reached, and in the interest of clarifying the jurisprudence upon the question, it is repudiated and expressly overruled.

For the reasons assigned, the judgment appealed from is affirmed.

McGREGOR, J. (dissenting). The only question at issue in this case is whether the lessor was given constructive notice by the recordation of the purported chattel mortgage which on its face was in notarial form and regular in every respect, and which had been signed in good faith by every person required by law. The only defect in the instrument was discovered at the trial of the case and this was that the mortgagor, the mortgagee, the two wit-

nesses, and the notary public did not sign the document at the same sitting in the presence of each other. This fact is held to deprive the act of its authenticity as a notarial act.

It is conceded that there was no actual personal notice of the existence of the chattel mortgage granted by the defendant to the intervener. The majority opinion therefore very correctly holds that the issues in the case are reduced to the sole question of whether the lessor was given constructive notice by the recordation of the mortgage in the form in which it was delivered to the recorder's office. This identical question was passed upon by the Orleans Court of Appeal in the case of Dainello v. McCoy, 15 La. App. 358, 131 So. 608, which case is cited with approval by the majority opinion. That is the only Louisiana case that I have been able to find. In the other states there are numerous cases analogous to this one, if not parallel with it.

11 Corpus Juris, Chattel Mortgages, 228:

"Where the defect, whether in the acknowledgment or in the lack of proper attesting witnesses, does not appear upon the face of the instrument some courts hold that when the instrument is fair upon its face, although there be a latent defect, the recordation thereof constitutes constructive notice under the recording acts. Other courts take the opposite view and hold that the defect, although not apparent on the face of the instrument, may be shown by extrinsic evidence and the effect of the record overcome."

1 Corpus Juris, Acknowledgments, 55:

"According to the weight of authority, where an instrument bearing a certificate of acknowledgment or proof which is regular on its face is presented to the recording officer, it becomes his duty to record it and the record thereof will operate as constructive notice, notwithstanding there be a hidden or latent defect in the acknowledgment; but there are authorities in which a contrary view has been asserted."

If all the parties to the chattel mortgage attacked, including the two witnesses and the notary public, had complied with the strict letter of the law by signing in the presence of each other and it had developed afterwards that the notary was disqualified for some legal reason, the act would certainly lose its character as a notarial act, and if the majority opinion is right, the recordation of such an act would not give constructive notice to third parties. In my opinion this defect would be far more serious than the defect of the various parties failing to have all the others present when signing. But there are any number of authorities to the effect that, notwithstanding this latent defect, the recordation of such a document will have full force and effect as constructive notice to third parties.

Boswell v. First National Bank, 16 Wyo. 161, 92 P. 624, 628, 93 P. 661. This was a case where it developed that the notary public before whom a chattel mortgage was passed and executed was disqualified and had no right or authority to act. This fact did not appear on the face of the record, but was discovered later and subsequent purchasers of the property subject to the chattel mortgage sought to acquire it free of the mortgage. The court held that the notary had no right to receive the acknowledgments of the parties, but that this fact did not invalidate the mortgage as between the parties, and that since it was not invalidated as between the parties the recordation of the mortgage in apparent perfect form gave constructive notice to third parties. In passing on this point the Supreme Court of Wyoming said:

"Error is assigned upon the court's refusal to permit proof on the part of defendant that the notary public who took the acknowledgment to each of the mortgages was at the time of taking the same a stockholder of the plaintiff bank, the mortgagee. Evidence to that effect was offered for the purpose of showing that

the officer was disqualified by reason of interest, which fact, it is contended, would render the acknowledgment void. A similar offer of proof was made as to the notary who administered and certified to the oaths to certain affidavits which had been filed as provided by law to continue the chattel mortgages in force as against third parties. That an officer who is financially or beneficially interested in the transaction is incompetent to take and certify the acknowledgment to an instrument is a well-settled and commendable rule, and is to be sustained, if for no other reason, upon the ground of public policy. By the great weight of authority the interest of a stockholder in a corporation is held to disqualify him to take an acknowledgment where the corporation is a party to the instrument. First Nat. Bank v. Citizens' State Bank, 11 Wyo. 32, 70 P. 726, 100 Am. St. Rep. 925. It is generally stated that an acknowledgment is void when taken and certified by an officer disqualified by reason of interest, and that, where an acknowledgment is essential to the validity of the instrument itself, the latter is also void if acknowledged before a disqualified officer, as in the case of a wife's conveyance of the homestead under our statutes. Id. The statement occasionally to be found in judicial decisions to the effect that an acknowledgment taken before an officer disqualified on account of interest is void for all purposes is not, we think, entirely accurate, if intended to apply in all cases. Its correctness may be conceded in respect to instruments which are absolutely void without a proper acknowledgment, and also instruments which disclose the defect upon their face or the face of the certificate of acknowledgment. Where, however, the infirmity is not apparent upon the face of the deed or instrument or certificate of acknowledgment, but the acknowledgment appears to be fair and regular and to have been properly taken, and the instrument is one which would not be invalidated as between the parties to it by a defective acknowledgment, the recording of the instrument in the proper office will operate as constructive notice thereof, notwithstanding the latent defect. This rule is sustained by abundant authority and is founded upon public policy, to carry out the purpose of the recording acts and preserve the reliability of the public records of transfers and conveyances. It is readily to be seen that a contrary rule would render unsafe any reliance upon the record of deeds or instruments requiring acknowledgment to entitle them to be recorded. It is clearly not incumbent upon the recording officer to enter upon an extrinsic investigation, before receiving for record an instrument regular on its face, to discover whether the acknowledging officer was in fact disqualified because of interest. So far as the defect now being considered is concerned, if upon the face thereof the instrument is recordable, and it is in fact recorded, the record should be held constructive notice to subsequent purchasers and others chargeable with record notice. 1 Cyc. 530, 553; 24 Ency. L. (2d Ed.) 103; Ogden B. Ass'n v. Mensch, 196 Ill. 554, 63 N. E. 1049, 89 Am. St. Rep. 330; Bank v. Hove, 45 Minn. 40, 47 N. W. 449; Peterson v. Lowrey, 48 Tex. 408; Blanton v. Bostic, 126 N. C. 418, 35 S.. E. 1035; Stevens v. Hampton, 46 Mo. 404; Titus v. Johnson, 50 Tex. 224; Morrow v. Cole, 58 N. J. Eq. 203, 42 A. 673; Angier v. Schieffelin, 72 Pa. 106, 13 Am. Rep. 659."

In the case at bar the defect or infirmity is latent and not apparent. On the face of the instrument it is perfect and regular in every respect, and all the testimony that discloses the fact that the witnesses and parties did not sign in the presence of each other positively affirms and shows, however, that all the parties actually did sign the document in good faith and that it was genuine in every respect. The same line of reasoning that holds that a document regular on its face will operate as constructive notice to third parties, notwithstanding the fact that by extrinsic evidence it is shown that the notary was not qualified to receive the acknowledgment, is convincing that any document notarial in form and duly recorded will operate as constructive notice to third parties, notwithstanding the fact that on the trial it is shown by extrinsic evidence that the parties were not actually in each

other's presence when they signed their names. It is true, of course, that when an act purporting to be a chattel mortgage proves to be not notarial in form it cannot be foreclosed via executiva. In this event it is necessary to proceed via ordinaria, and in that suit the mortgagee has the right to prove his mortgage. If he succeeds in proving his mortgage in proceedings via ordinaria, it is good against the world and is just as effective against third parties as it is against the mortgagor, and it necessarily follows that its effect begins from the date of its recordation.

The rules relative to the sale of real estate are as strict as, if not stricter than, those relative to chattel mortgages or movable property. In the case of Stallcup v. Pyron, 33 La. Ann. 1249, it was held:

"It is elementary that, between the parties to the act, defendant's sale without registry was translative of title, and was a perfect conveyance, and that registry in the proper office was the only element wanting to render it binding on third parties, and on the world. The object of registry is notice, and we hold, as settled, that notice is given by the registry of a sale under private signature, even without proof of the signatures of the parties thereo, as required by Art. 2253.

"A broad distinction exists and must be made in law, between the effect of registry of an act of sale, as to notice, and the effect of such an act as proof of title. And, in this connection, it is to be noted that, in the Code of 1825, Art. 2250, which is Art. 2253 of our present Code, is to be found under the head of 'Copies of Titles.' The rule is, that an act of sale under private signature, recorded in the conveyance office, even without proof of the signatures of the parties to the act, is sufficient to give notice which is the only object of registry; but that such an act, thus registered, could not be used as evidence of the title which it purports to transfer, adversely to third parties, without proof of such signatures. To illustrate, if, at the time of the trial of this case, no proof had ever been given of the signatures of the parties at or preceding the registry, as prescribed in Art. 2253, and if the attesting witnesses and the parties to the act had been dead, or no proof as required by the article, could have been offered on the trial, of the signatures to the act, then, and in that case, the act would have had no effect as to plaintiff, and would not have been evidence adversely to him of the title set up in the case at bar. This shows the distinction to be made between the sufficiency of the proof for registry as to notice, and the proof of acts of sale under private signature, as controlled by the rules of evidence."

So, in the case before us, if the intervener had failed to establish proof of the signatures of the parties at the trial, it would have had no rights in the premises. Since the same evidence which showed that the parties did not sign the document all in the presence of each other conclusively proved, however, that they did sign it with the intention of granting a chattel mortgage, the mortgage was definitely established as between the parties and its recordation necessarily operated as constructive notice to the world from the exact time when it was filed for record.

In the case of Allen, West & Bush v. Whetstone, 35 La. Ann. 846, it was held that the registry of an act of sale under private signature is binding as notice to third parties, though with proof of signatures as directed by Revised Civil Code, art. 2253. This proof of signature may be made at the trial, and, if successful, it is good against the world. This case was cited with approval in the case of Burns v. Thompson, 39 La. Ann. 377, 1 So. 913, 920, as follows:

"Our jurisprudence has always recognized a broad distinction in law between the effect of registry of an act, as to notice, and the effect of such an act as proof of the contract which it purports to evidence. Allen, West & Bush v. Whetstone, 35 La. Ann. 847; Stallcup v. Pyron, 33 La. Ann. 1249, and authorities therein cited."

In the case of Nelson v. Forbes & Sons et al., 164 Ark. 460, 261 S. W. 910, 912, the validity of a recorded chattel mortgage was attacked on the ground that it was proved by extrinsic evidence that the two witnesses were incompetent and disqualified under the law. In passing upon the point raised, the Arkansas Supreme Court said:

"The mortgage in question is attested by Thomas Bromley and Albert Bromley, and it is said that the attesting witnesses are the minor children of the mortgagor and are not disinterested witnesses within the meaning of the statute quoted. It does not appear by what authority this statement is made, as no testimony is abstracted or referred to upon which to base it. The fact may be as stated, but, if so, it does not appear from the record before us as abstracted. Moreover, the relationship or interest or minority of the attesting witnesses does not appear from the face of the instrument which they witnessed, and we need not, therefore, consider whether the infancy of the witnesses or their relationship to the mortgagor is such as to render them ineligible as attesting witnesses, under the statute quoted, because of the construction of this statute by the Supreme Court of Oklahoma.

"The statute was construed in the case of Lankford v. First National Bank of Lawton, 75 Okl. 159, 183 P. 56. It was there insisted that the attesting witnesses to the mortgage in question were interested, but the interest did not appear upon the face of the mortgage. The court quoted the two rules on this subject as stated in 1 C. J. pp. 772 and 773, and approved what was stated to be the majority rule."

The effect of the decision in the above-cited case is that, if the latent defect is not of such a nature that the document can be voided and declared null by the mortgagor, its recordation is operative as notice to third parties. Certainly, it will not be contended that the failure of these parties to sign the chattel mortgage ·in the presence of each other can or will defeat the intervener's mortgage rights against the defendant.

In the case of Lankford v. First Nat. Bank, 75 Okl. 159, 183 P. 56, the Oklahoma Supreme Court held that, where there is a latent defect in a chattel mortgage which is regular on its face, its recordation operates as notice to third parties in all cases in which the mortgage is effective against the mortgagor, in spite of the latent defect. The case of Morrow v. Cole, 58 N. J. Eq. 203, 42 A. 673, is to the same effect.

In the case of Bank of Benson v. Hove, 45 Minn. 40, 47 N. W. 449, 450, it was held:

"But the question is not really involved in this case, for the mortgage was valid as between the parties to it, without an acknowledgment; and as to the defendant, a subsequent mortgagee, the record was notice, because an instrument so acknowledged, not disclosing the alleged disqualification of the notary, would be entitled to record, and be notice to him, so that he was bound by it. Any other rule would destroy the reliability of the public records, and lead to most mischievous results. The doctrine appears to be well settled."

So, in the case at bar, the chattel mortgage was valid as between the parties and its recordation in regular notarial form operated as constructive notice to third parties. Of course, when the latent defects were disclosed by evidence, the mortgagee had to establish his right to foreclose in a suit via ordinaria. The fact that this was done in this case is conclusive that the recordation was proper notice. This case was cited with approval by the Supreme Court of Minnesota in the case of Berkner et al. v. D'Evelyn et al., 119 Minn. 246, 137 N. W. 1097, 1098, as follows:

"The contention in this case is that, since the plaintiffs' mortgage was not attested by two competent witnesses, it was

not executed in conformity with the statute, and therefore, not entitled to record, and, though, filed in the proper office, was not constructive notice to third persons. If the defect in the execution of the mortgage appeared upon the face of the instrument, the soundness of defendants' position could not be questioned. Tweto v. Horton, 90 Minn. 451, 97 N. W. 128. The authorities are practically uniform in so holding. But there is a diversity of opinion in cases, like that at bar, where the defect, whether in the acknowledgment or in the lack of proper attesting witnesses, does not appear upon the face of the instrument. A large number of respectable courts hold that, when the instrument is fair upon its face, though there be a latent defect, the record thereof constitutes constructive notice under the recording acts. Read v. Toledo Loan Co., 68 Ohio St. 280, 67 N. E. 729, 62 L. R. A. 790, 96 Am. St. Rep. 663; Fisher v. Porter, 11 S. D. 311, 77 N. W. 112; Ogden v. Mensch, 196 Ill. 554, 63 N. E. 1049, 89 Am. St. Rep. 330; Morrow v. Cole, 58 N. J. Eq. 203, 42 A. 673; Blanton v. Bostic, 126 N. C. 418, 35 S. E. 1035. Other courts take the opposite view, and hold that the defect, though not apparent upon the face of the instrument may be shown by extrinsic evidence, and the effect of the record overcome. Donovan v. Elevator Co., 8 N. D. 585, 80 N. W. 772, 46 L. R. A. 721, 73 Am. St. Rep. 779, and authorities there cited. We think the question was definitely settled in this state in favor of the rule first above stated in Bank of Benson v. Hove, 45 Minn. 40, 47 N. W. 449. In that case the chattel mortgage was acknowledged before a notary public who was an officer and stockholder of the mortgagee, a corporation. The court there held that 'the law forbids that the acknowledgment of such instruments should be taken before a party to the same, or by one who takes some interest under it, whether as a grantee, mortgagee, partner, or trustee,' but that, since the disqualification of the notary did not appear upon the face of the instrument, the mortgage was entitled to record, and constituted constructive notice to third persons. The rule there laid down has since been acted upon as expressing the law of this state, and has been followed and applied in later cases and by other courts. 3 Notes to Minn.

Cases, 440. There can be no difference of a substantial nature between a mortgage thus improperly acknowledged and one witnessed by an interested party, where the fact of interest and consequent disqualification does not appear on the face of the mortgage. If there be any difference from a legal standpoint, it would seem that the improper witnessing was of less significance than the unauthorized acknowledgment. But from a logical standpoint there is no difference between the two situations. We follow and apply, therefore, the rule laid down in the Bank case, and hold that plaintiffs' mortgage was constructive notice to all persons dealing with the mortgaged property."

The court has a right to take cognizance of the fact that there is a very widespread custom prevailing in this state whereby sales, mortgages on real estate, and chattel mortgages are executed without strict conformity to the law. Whenever it develops by extrinsic evidence that this is true of an act, it loses its force as a notarial act; but in the absence of fraud which, of course, cuts down everything, the act, if regular in form, is good as a private act, and if the plaintiff can prove the facts which the act itself would have proved if it had not been deprived of its authenticity by the uncovered latent defect, his rights against the defendant are established and the recordation of the act operates as notice to third parties from the date of the recordation.

In my opinion, to hold otherwise would be disastrous to the business world, for, no doubt, there are thousands of such cases on record. If the doctrine held by the majority opinion should prevail, every chattel mortgage held by furniture and automobile dealers could be avoided in cases where all the parties were not together at the time of signing. In the case at bar every signature was genuine and was affixed before the document was recorded. The defendant intended to give a chattel mort-

gage. The document was regular on its face, was notarial in form, and was recorded before the property was placed in the leased building.

It might be contended that to enforce the doctrine contended for in this dissenting opinion would nullify the provision of section 2 of the Chattel Mortgage Act. This is not necessarily true, but if the reasoning set forth herein is correct and if that reasoning does nullify any portions of the act, the result is inevitable. It is not uncommon to find certain provisions of statutes inconsistent with each other. For instance, to give full force and effect to this particular section would violate another equally important provision of law. This section specifically provides that, in order to affect third persons without notice, the chattel mortgage must be a notarial act and must be recorded. It is a natural inference from that provision that personal knowledge of the existence of a chattel mortgage in the form of a private act unrecorded would be binding on a third person, but such is not the case. Regardless of the knowledge of the existence of such an act, it is not binding on third persons until recorded, for section 4 of the same act provides that chattel mortgages are liens on property only from the date of recordation. The Registry Act of 1918 has been held to apply to chattel mortgages, just as it does to all other acts. Failure to record is fatal in all cases, and yet the logical inference from the strict literal interpretation of section 2 is that personal knowledge of an unrecorded chattel mortgage in the form of a private act is binding on third parties.

I think that the judgment of the lower court should be reversed, and that the intervener's rights under its chattel mortgage should be recognized as superior to the plaintiff's lessor's lien. I therefore respectfully dissent.