The controversial question tendered by this appeal is: As between plaintiffs, lessors, and the intervenor, alleged mortgagee, who is entitled to the proceeds of sale of certain chattels provisionally seized in the premises leased by defendant. Decision of this question pivots upon the validity and effectiveness, or lack thereof, of a chattel mortgage executed by defendant to and in favor of the intervenor to secure payment of a note representing the balance due on the purchase price of the chattels.
Plaintiffs' position is that their lessor's lien and privilege is paramount to the asserted mortgage for the reason, inter alia, that the mortgage is fatally defective in that the property supposedly sought to be affected thereby was not sufficiently described therein to afford identification or to serve as notice to third persons. The lower court ruled in favor of the intervenor and plaintiffs appealed to this court.
Defendant made no appearance nor filed answer. Issue as to him was joined by default. He has passed from the case in so far as concerns the present controversy.
Plaintiffs and defendant on January 25, 1940, entered into a written contract of lease for a period of years embracing a lot at municipal number 1011 Jordan Street, City of Shreveport, with improvements thereon or to be thereon erected. The lease provides that it should become effective on April 10, 1940, but if the building then under contract for erection was not ready for occupancy on that date, the effectiveness of the lease would automatically be deferred until the building was ready for occupancy. The record does not definitely disclose the date defendant occupied the property as tenant. The opening day for business was May 1st, but the seized fixtures were delivered to defendant on the leased premises April 22nd. The chattel mortgage was executed February 12th and was recorded April 16th. Therefore, since the mortgage was recorded prior to delivery of the chattels into the leased premises, it primes the lessor's lien and privilege if not vulnerable to the attack made against it. Youree et al. v. Limerick, 157 La. 39, 101 So. 864, 37 A.L.R. 394; White Company v. Hammond Stage Lines, 180 La. 962-970,158 So. 353.
Defendant, in February, 1940, placed with intervenor's local representative, an order for the fixtures involved herein, with instructions that shipment thereof from St. Louis, Missouri, be made after notice. The building was not then completed, hence, the delay in shipping. However, at this time the mortgage was executed. The description appearing therein when executed is as follows:
" Hussmann-Ligonier
 One 25 Ms Condensing Unit(s) — 1/4 H.P.
 One R-4 Grocer Refrigerator(s) — Glass Doors."
In a column to the right of said description headed "Price F.O.B." was written the word "Store". This evidently alludes to the incomplete building. No street number is given in the act as part of the identifying description nor is there mention of the name of the city, parish, or state in which the store was located.
The act of mortgage on its face was signed before a notary public and two witnesses. It was then sent to intervenor's office at St. Louis for examination and acceptance. Thereafter it was returned to said agent, who, after being advised by letter from intervenor the serial numbers of the chattels set apart for defendant, inserted said numbers in the act of mortgage as part of the identifying description, out of the presence of the defendant, the notary and the two attesting witnesses. As thus altered, the instrument was filed for record and promptly recorded.
Plaintiffs contend that this alteration renders the entire mortgage null and void. Alternatively they contend that the alteration made at the time and under the circumstances admitted, did not and could not have the effect of augmenting the preexisting imperfect and indefinite description so as to provide notice to and be effective against third persons, even though the act be recorded. We are favorably impressed with this position. *Page 243 
Section 2 of Act 178 of 1936, amending prior laws on the subject of chattel mortgages, so far as germane to the issues herein, reads as follows:
"Every such mortgage of property mentioned in Section 1 shall be in writing, setting out a full description of such property to be mortgaged, so that the same may be identified, and also stating definitely the time when the obligation shall mature. In order to affect third persons without notice, * * * said instrument must be passed by notarial act, or by private act duly acknowledged by one of the parties thereto, or by a subscribing witness thereto, before a Notary Public, and the original or a certified copy thereof shall be recorded * * *."
Section 4 of said act ordains that "every such mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, * * * and said lien shall be superior in rank to any privilege or lien arising subsequently thereto."
Under this statute a chattel mortgage must be in writing. To affect third persons it must be in one of the two permissive forms, to-wit:
(1) A notarial act, which means that it must be signed at least by the mortgagor before a notary public or other officer authorized to discharge such functions, and two competent attesting witnesses (over fourteen years of age). Article 2234 of Civil Code. Miller v. Brugier et al., 176 La. 106, 145 So. 282.
(2) By private act; that is, signed by the mortgagor with or without attesting witnesses and thereafter acknowledged by him before a notary public, or, when attested by witnesses, acknowledged by one of them before a notary public. If the mortgage is signed by the mortgagee, he also may acknowledge same before a notary public under the provisions of the act. To complete the requirements necessary to affect third persons without notice, the instrument, in either form, must be recorded in the manner prescribed in the statute.
It is not contended nor intimated that plaintiffs are not third persons without notice within the meaning of the act. The record would disprove any such suggestion if urged.
It is clear that without the serial numbers the chattels could not be identified. The manufacturer turns out many thousands of such chattels annually and to differentiate one from the others, serial numbers or other distinguishing mark or marks are necessarily given to each. When defendant closed the sale for the chattels, he, of course, did not know of which ones from the stock on hand or from those to be thereafter manufactured he would become the owner. His ignorance on this score continued until the chattels were delivered to him on the leased premises. Without doubt it was his intention to mortgage the fixtures which would eventually be delivered to him but the mortgage when executed did not specify which of the many fixtures of same kind and character he would become the owner. When signed by the witnesses, the notary and the parties, the mortgage was incomplete and as to third persons without notice, fatally defective because the objects against which it was intended to operate were not sufficiently and definitely described therein to identify them.
The insertion of the serial numbers was the voluntary action of the agent and they did not in reality become an integral part of the mortgage. These additions to the instrument were not part of a notarial act nor of an act under private signature acknowledged in the manner prescribed by the statute. As to them, there was no proof such as would be inferred from a notarial act or an act under private signature properly acknowledged. And the fact that the mortgage was recorded subsequent to incorporation of said identifying numbers therein did not alter the preexisting situation so as to vitalize that which ab initio did not exist. In such circumstances the effectiveness of the mortgage must be gauged and determined as of the time when executed.
To bring into existence the lien and privilege established by the statute, strict compliance with its requirements must be pursued. Such liens and privileges, it is uniformly held, are stricti juris. All prerequisites to their birth must be strictly observed. This principle is firmly imbedded in the jurisprudence of this state since legalization of chattel mortgages. Peoples Homestead Savings Association v. Cann et al., La.App., 180 So. 197; Valley Securities Company, Inc., v. De Roussel, 16 La.App. 115, 133 So. 405; Consolidated Companies v. Laws, 11 La.App. 676, 124 So. 775; New Way Family Laundry, Inc., v. Lebo, 16 La.App. 157, 133 So. 463. *Page 244 
To further illustrate the strictness of the discussed rule of construction, this court in Lieber v. Watts, 19 La.App. 650, 139 So. 778, held:
"Recordation of chattel mortgage executed before notary without witnesses being present held not constructive notice, as regards subsequent lessor's lien (Act No. 198 of 1918, §§ 2, 4; Civ. Code art. 2234)."
This decision prompted the Legislature to amend the chattel mortgage law by adopting Act 189 of 1932 to which Act 178 of 1936 is an amendment.
The fact that the alterations were made in good faith is unimportant in a case of this character. If such an alteration be upheld with the good effect contended for by intervenor, it is obvious that the door for the admission of fraud and imposition would be opened wide. Various and sundry provisions and/or descriptions could be added to a mortgage which would have far reaching effect and accomplish much mischief after registry. 2nd Am.Jur. 608, § 16, discussing this phase of the subject, says:
"* * * A material alteration of an instrument by a party thereto will vitiate it, though made with no fraudulent intent whatever and with an entirely honest motive. The law holds the instrument void not because the thing done is actual fraud, but because a contrary rule would open the door for fraud, and because the alteration changes the legal identity of the paper and causes it to speak a language differing in legal effect from that which it originally spoke. * * *"
The United States Supreme Court in Theodore J. Moelle v. James K. Sherwood, 148 U.S. 21, 13 S.Ct. 426, 428, 37 L.Ed. 350, considered and passed upon the significance and effect of an alteration of the description in a conveyance of land done after delivery and registry of the instrument. It was said and held therein:
"The change in the description of the property, made after the delivery of the deed to the grantee, and its record in the register's office of the county, did not give operation and force to the deed, with the changed description, as a conveyance of the premises in controversy. An alteration in the description of property embraced in a deed, so as to make the instrument cover property different from that originally embraced, whether or not it destroys the validity of the instrument as a conveyance of the property originally described, certainly does not give it validity as a conveyance of the property of which the new description is inserted. The old execution and acknowledgment are not continued in existence as to the new property. To give effect to the deed as one of the newly-described property, it should have been re-executed, reacknowledged, and redelivered. In other words, a new conveyance should have been made."
The Alabama Supreme Court in Hess et al. v. Hodges, 201 Ala. 309,78 So. 85, L.R.A.1918D, 858, had this question before it and squarely held, as reflected from the syllabus of the case:
"Acknowledgment and delivery of a deed having been perfected, correction of the description therein by the grantor, though with the grantee's consent, had no effect or operation; the instrument not having been again acknowledged or attested."
For the reasons herein assigned, the judgment appealed from is reversed, annulled and set aside and there is now judgment for plaintiffs, Mrs. Ethel B. Smith and Blanchard Smith, and against intervenor, Allied Store Utilities Company, declaring and holding the chattel mortgage involved herein, insofar as same concerns the plaintiffs, to be null, void and of no effect as a lien or privilege against the chattels described therein.
It is further ordered, adjudged and decreed that plaintiffs' lessor's lien and privilege on said chattels and proceeds of sale thereof, in controversy herein, be and same are hereby recognized as being paramount, and, accordingly, said proceeds of sale are hereby decreed to belong to plaintiffs to whom the same shall be paid by the sheriff of Caddo Parish.
Costs of court incurred in the filing and prosecution of the third opposition and intervention, including those on appeal, are hereby assessed against Allied Store Utilities Company.
 On Application for Rehearing.