**In re MICROBIOLOGICAL SCIENCES, INC. d/b/a Lab–Ability, R.R. Baktron and Cultiloop, Debtor.**

**Bankruptcy No. 90–10038.**

United States Bankruptcy Court, D. Rhode Island.

Oct. 28, 1992.

Andrew Z. Schwartz, Foley, Hoag & Eliot, Boston, Mass., for Kenneth McGaw.

Charles R. Bennett, Jr., Paul S. Samson, Riemer & Braunstein, Boston, Mass., for Shawmut Bank, N.A.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on June 4, 1992 on Shawmut Bank's amended objection to Claim No. 65

filed by Kenneth McGaw, in his capacity as Trustee for Metallurgical Consultants Pension Plan and Lindell Motors, Inc. Profit Sharing Plan.

■ Despite the protracted and contentious nature of the ongoing disputes between Shawmut and McGaw,[1] the only issue now before the Court is whether, under applicable Louisiana law, McGaw properly perfected his alleged security interest in certain personal property, which has a stipulated value of $34,300.[2]

## BACKGROUND

On September 7, 1990, this Court approved from the bench the sale of certain assets of the Debtor, free and clear of all liens and encumbrances. Thereafter, a formal order approving the sale was submitted to the Court, and ultimately entered on September 28, 1990. *See* Revised Order (i) Authorizing Sale of Certain Assets Free and Clear of All Liens and Encumbrances Pursuant to 11 U.S.C. § 363 and (ii) Authorizing Assumption of Certain Executory Contracts.

Pursuant to these orders, the proceeds from the sale of personal property located in Louisiana were placed in escrow until the competing rights of McGaw and Shawmut to those funds were determined. Reference is made to the attachments to the September 28, 1990 order regarding the assets that have been sold.

McGaw filed his proof of claim on June 4, 1990 in the amount of $250,000, as a secured claim. Attached were copies of certain loan documents, including a $250,000 Promissory Note from Microbiological Sciences, Inc. to Kenneth A. McGaw, Trustee dated May 17, 1988 (the "Note"), and a document entitled "Act of Mortgage and

1. Although neither party has asked this Court to abstain from rendering a decision, in light of all the time spent on this dispute, the Court will render its decision. In retrospect, however, it appears that abstention would have been appropriate, since the resolution of this matter has no effect on the bankruptcy estate.

2. At the June 4 hearing, counsel for Shawmut stated "we are prepared to use that number as the number to work with. I'm not going to object to the thirty-four three number; and we agree that the issue is whether they're secured and whether they're perfected." (Tr. at 7.)

Chattel Mortgage" of the same date (the "McGaw Mortgage"). The McGaw Mortgage, which was recorded in the State of Louisiana in 1988 and 1990 (Joint Pre-trial Statement, at 5), states, *inter alia*, that

This mortgage shall cover and include not only the real estate hereinabove described, with all the buildings and improvements thereon, but, also, any and all appliances, equipment, including but not limited to heating, cooling, regrigeration [sic], ventilating, air-conditioning, equipment or systems, storage units, supplies, furniture and fixtures and all other movable and personal property located in, on or attached to said real estate owned by the mortgagor, it being intended that the loan secured hereby shall be additionally secured to the fullest extent permitted by R.S. 9:9531 *et seq.*

According to Shawmut's Proof of Claim filed on May 23, 1990, the Debtor owes Shawmut approximately $6,200,000 under its guarantees of a Revolving Financing Agreement dated January 31, 1983. That agreement provided for post-petition financing to Scott Prepared Culture Media Laboratories, Inc., in accordance with a Stipulation entered in the Scott Chapter 11 case on September 28, 1989. Shawmut has since agreed to waive the unsecured portion of its claim. *See In re Microbiological Sciences, Inc.*, BK No. 90–10038, slip op. at 4 (Sept. 28, 1990). The Revolving Financing Agreement was secured by certain agreements also dated January 31, 1983, which granted Shawmut a security interest in all accounts receivable, equipment, inventory, and farm products of Scott, and by a guaranty of the Debtor. Shawmut's claimed security interests were evidenced by Chattel Mortgages executed by both Scott and the Debtor, notices of which were filed in two parishes of the State of Louisiana in 1989, *after* McGaw recorded his mortgage.

On September 28, 1990, Shawmut filed an objection to McGaw's claim, on the ground that the supporting documents failed to create a mortgage or security interest in moveable and personal property of the Debtor, and that any such security interest was not properly perfected in any event. McGaw opposed Shawmut's objection initially on the ground that Shawmut had failed to specify the legal basis for its position. On November 11, 1990, Shawmut filed an Amended and Restated Objection to McGaw's Proof of Claim.

## DISCUSSION

The parties agree that Part IV of Chapter 2 of Title XXII of Code Book III of Title 9 of the Louisiana Revised Statutes in effect at the time of the recording of McGaw's mortgage controls the resolution of the instant dispute, notwithstanding the tortured subsequent history of this section. *See generally* Peter S. Title, 1 *Louisiana Real Estate Transactions* § 13.1 et seq. (1991); 2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise* § 230 (3d ed. 1991).

This Part, entitled "Mortgages of Movables Used in Commercial or Industrial Activity" provides at § 5368:

A mortgage authorized by this Part shall describe the premises upon which the movables are located or to be located, identify the type of commercial or industrial activity being conducted or to be conducted on or by use of such premises and contain a declaration substantially to the effect that the mortgage affects all the corporeal movables of the mortgagor that are located from time to time upon the premises for use in the conduct of the activity. No other description of the movables shall be required. The mortgage may exclude particular movables or those of an identifiable type or character.

La.Rev.Stat. § 9:5368 (1980).

■ For our purposes, the requirements under this section may be simplified as follows:

1. A "movables" mortgage must provide a description of the premises;

2. It must identify the type of commercial or industrial activity being conducted on the premises; and,

3. It must contain a declaration that the mortgage affects the movables.

Shawmut argues that *none* of the requirements of this section have been satis-

fied in McGaw's papers, and that as a result, what McGaw has is not a Part IV "in globo" mortgage, but at best only a Part III chattel mortgage. Shawmut then reasons that because McGaw has not recorded its mortgage in East Baton Rouge Parish, as it would be required to do for a Part III chattel mortgage, Shawmut's interest trumps that of McGaw. We address Shawmut's arguments, in order.

■ The first element of § 5368, a description of the premises, should be conceded by Shawmut, but is not. The mortgage contains a metes and bounds description of the premises which correctly and in detail describes the subject premises. It is hard to imagine a description that would more satisfactorily comply with this provision. In fact, at the hearing, counsel for Shawmut apparently conceded this element, but it has been raised as a contested issue in Shawmut's memorandum. We are satisfied that this provision is met, and that Shawmut's argument is frivolous.

■ The second element, identification of the commercial or industrial activity, is described by Shawmut as McGaw's weakest link of all. McGaw allows that nowhere within the body of the mortgage is there a formal description of the type of business conducted at the premises. He argues, however, that the name of the business—"Microbiological Sciences" and "Scott Prepared Media Culture Laboratories" (the Debtor's subsidiary whose name appears along with the mortgage)—are sufficiently descriptive of the type of business conducted on the premises to satisfy the statutory requirements. We agree entirely, and conclude that the name of this business more than adequately describes the activity being conducted, just as though we were dealing with a counter-type eating establishment displaying a sign "New York System Weiners." For those interested in more detail, Funk & Wagnall's New Comprehensive International Dictionary defines "microbiology" as "the scientific study of the structure, development, function, and mode of action of micro-organisms, such as bacteria, viruses, molds, etc., especially

with regard to their significance in health and disease." (McGaw's Mem. in Supp. at 10–11).

McGaw maintains that the legislative purpose of this provision is to ensure that the commercial or industrial activity being conducted does not involve certain specific movables excluded from Article IV,[3] and that in construing the statute, said purpose must be borne in mind. We find the comment to § 9:5368 helpful in determining the light in which the section ought properly to be read, notwithstanding that the history to the section "headnotes, exposé des motifs [recital of purposes], and the comments in this Act are not intended to be considered as part of the law and are not enacted into the law by virtue of their inclusion in the Act." The comment advises us as follows: "[t]his Section makes it clear that the movables need only be generally described and sets forth the minimum limits necessary to identify them. It also permits the exclusion of property of an identifiable nature or character if the parties to the transaction desire to do so."

This liberalized approach to the identification requirements is in sharp contrast to the rule of interpretation urged upon us by Shawmut. Shawmut cites a line of aging cases standing for the proposition that recording requirements in Louisiana are to follow the maxim *stricti jurus*. *See All State Credit Plan Houma, Inc. v. Fournier*, 175 So.2d 707, 713 (La.Ct.App.1965) (chattel mortgage on appliances must include serial numbers); *Abbott v. Temple*, 73 So.2d 647, 649 (La.Ct.App.1954) (chattel mortgage formalities must be strictly complied with); *Smith v. Bratsos*, 12 So.2d 241, 243 (La.Ct.App.1942) *rev'd*, 202 La. 493, 12 So.2d 245 (1942) (chattel mortgage liens are stricti juris; all prerequisites to their birth must be strictly observed). Shawmut's cases do not, however, deal with Part IV of the statute in question.

The cases cited by Shawmut also suggest that "identification" of goods *for chattel mortgages* is to be strictly construed, but Shawmut cites to no cases dealing with the

---

**3.** La.Rev.St. § 9;5372 excludes mineral rights, automobiles, and agricultural equipment.

"in globo" mortgage under consideration here (indeed, there are no such published opinions). In 1981, the Louisiana Court of Appeal noted that the jurisprudential rule to be applied to interpretation of the chattel mortgage description provisions is "more liberal than a strict construction of the statute." The Court went on to say that it turns on "the peculiar circumstances of each individual case." *Domengeaux v. Daniels,* 401 So.2d 655, 658 (La.Ct.App. 1981) (citing *All State Credit Plan Houma,* 175 So.2d 707).

Because the former rule is inconsistent with the tenor of the new security vehicle established in 1980 by Part IV, we reject the application of *stricti jurus* to this section and hold that the description of the activity conducted on the premises is sufficiently identified by the name of the mortgagor. This conclusion is supported by the fact that the activity conducted, as well as the movables so referenced, are not excluded by the provisions of § 9:5372. We are satisfied that the description of the activity within the name of the mortgagor, "Microbiological Sciences," and "Scott Prepared Media Culture Laboratories" is sufficient. The name of this business and its subsidiary leave little to the imagination, and no additional verbiage is necessary to describe more fully just what business this Debtor was engaged in.

Neither is the third element, declaration of the movables, forfeited by McGaw because of his failure to include the magic words "I declare," as Shawmut argues. There clearly is sufficient declaratory language "substantially to the effect" of a declaration in the mortgage to satisfy this provision.

Finally, the omission of the term "in globo" from the language of the mortgage does not cause McGaw's mortgage to fail the Part IV test. The term appears nowhere in the statute but only in the "recital of purpose," which as we have noted is not a part of the Act. Shawmut's argument that McGaw's lack of "in globo" language defeats the letter of the provision and belies McGaw's intent to create a Part IV mortgage, is unpersuasive.

For all of the foregoing reasons, Shawmut's amended objection to McGaw's Proof of Claim No. 65 is OVERRULED, and the claim is allowed as filed.

Finally, during the briefing period, Shawmut filed a Motion to Strike an exhibit to McGaw's memorandum, which is an appraisal of the subject movables. The Motion to Strike is DENIED because: (1) the Court has not considered the contents of the appraisal in this analysis (the parties had already agreed that the movables were non-exempt movables under § 9:5372; and (2) because the only apparent purpose of the attachment was in response to Shawmut's belated challenge as to the status of the movables.

Enter Judgment consistent with this opinion.