ORA ROOKSTOOL, APPELLANT, v. CUDAHY PACKING COMPANY ET AL., APPELLEES.

FILED FEBRUARY 21, 1917. No. 18647.

1. Pleading: CONSTRUCTION. If a petition of a minor by his next friend to recover damages for personal injury alleges the age of the minor at the time of the injury was 14 years, another allegation in the petition that he was under 15 years at that time must be construed as against the pleader as also alleging that he was 14 years old at the time of the injury.

2. ———: CAUSE OF ACTION: REVIEW. If such petition counts only upon a common-law liability of the employer, and the evidence and all proceedings upon the trial are consistent only with that construction of the pleadings, and the case is, upon that theory, submitted to the trial court, this court upon appeal will so consider it, and the statute which prohibits the employment of minors between the ages of 14 and 16 years has no application.

Rookstool v. Cudahy Packing Co.

3. **Master and Servant:** INJURY TO SERVANT: ACTION: REVIEW. In such action, if the petition does not allege any defect in the machinery or appliances by which the plaintiff was injured, and no question was suggested upon the trial, it will not be considered in this court upon appeal.

Opinion on motion for rehearing of case reported, *ante,* p. 118. *Former judgment of reversal vacated, and judgment of district court affirmed.*

SEDGWICK, J.

The trial court instructed the jury to find a verdict for the defendant, and by our former opinion, *ante,* p. 118, the judgment of the trial court was reversed. On motion for rehearing the case has been again submitted upon an additional brief and oral arguments.

The plaintiff, who was a minor, brought the action by his mother as next friend to recover damages caused by an injury in an elevator while the plaintiff was in the employment of the defendant company. The petition alleged, "plaintiff herein is a minor of the age of 18 years," and alleged that the accident occurred on the 22d day of May, 1910, and that "plaintiff was at that time less than 15 years of age." As the action was begun on the 23d day of October, 1913, the allegation that he was then 18 years of age was an allegation that when the accident occurred he was more than 14 years of age, and the direct allegation that when the accident occurred he was less than 15 years of age must also, as against the pleader, be construed to mean that he was past 14 years of age. The petition counts entirely upon a common law liability, and not upon the statute which prohibits the employment of a child under 14 years of age, or the statute which prohibits the employment of one under 16 and over 14 years of age, except on certain conditions. The allegation in the petition in that regard was: "Plaintiff further alleges that at that time, and on the date aforesaid, plaintiff herein was a minor, and was not familiar with nor did he appreciate the dangers incident to the operation of

said elevator, nor did this minor plaintiff understand or appreciate the specific danger, the danger of looking into the elevator shaft in the manner hereinbefore set forth. And plaintiff further avers and alleges that the defendant .company· failed and neglected to warn plaintiff of the danger of looking into the shaft of said elevator; nor did the defendant company warn this plaintiff of the danger of being caught by the descending elevator while looking into the shaft thereof." If the employment of a child under 14 years of age is the cause of his injury, his employer would be liable for damages. It is not necessary to determine in this case whether the employer of such a child would be liable for any and all injuries that might occur to him while in such employment, without regard to whether said injuries depended upon his tender· years, since this record is conclusive that the plaintiff was more than 14 years of age. The plaintiff was himself asked upon the witness-stand to state his age, and stated that he was 18 years of age. If he was 18 years of age at the time· of the trial, he must have been more than 14 years of age at the time of the injury, according to the allegations of the petition. The plaintiff and his mother testified that at the time of the accident the plaintiff was 13 years of age. But this was several years after the injury, and must be considered as an error in computation on their part, rather than a deliberate intention without any explanation to deny the allegations of the petition, which were also under oath. This statute has not been frequently construed by this court. The section that prohibits employment between the ages of 14 and 16 years is followed by several sections from which it might be contended that this provision is rather in the interest of the education of the child than to protect it from unnecessary dangers as the former section does. However that may be, this court has said: "Plaintiff, having induced the court to adopt one theory, ought not to complain because a dif-

ferent doctrine was not followed." *Hankins v. Reimers,* 86 Neb. 307. In that case the petition alleged that the deceased was under the age of 16 years, but the case was tried and submitted to the jury by the court under instructions upon the theory that the action was for the common-law liability, and, as no objection was made to so submitting it, the plaintiff was not allowed to count upon the fact that the deceased was under 16 years of age. As we have already said, the petition in the case at bar counted strictly upon the common-law liability. There was nothing in the evidence or in the manner of trial that indicated any other theory of liability. It was upon that theory that the defendant asked the court to instruct the jury to find a verdict in defendant's favor. No objection was made to the assumption that it was submitted as upon the common-law liability, and the question of the effect of the statutes now being considered was first presented in this court. The *Reimers* case is therefore in point.

The petition alleges that it was customary when the elevator was lowered to give a signal before passing each floor, and that in this case the operator of the elevator neglected to give such signal. This, however, would not justify placing oneself in the shaft to observe the location of the elevator. The plaintiff testified that there was a place at each floor to ring a bell and call the elevator; that there was a bell on the floor where he was hurt, and that he did not ring the bell, but stood there watching his friend; that a man on one floor who wanted the elevator to come to his floor would "ring the bell—push the button." "Q. If he was on floor one he would give it one bell, or number two, two accordingly? Is that the way it was operated? A. Yes, sir. Q. And the elevator did not move unless that bell was sounded? A. Wasn't supposed to, was the way I understood it." This evidence shows that he fully understood how to use the elevator, and that putting his head into the elevator shaft had nothing

to do with the use of the elevator, but was a matter of idle curiosity.

It is now contended that it was negligence to leave an opening in the shaft that permitted plaintiff to insert his head. But there is no allegation in the petition that raises that question. Nothing is alleged about this opening in the shaft, and no defect in the construction of the elevator or shaft is counted upon. The alleged negligence of the defendant is not proved. The plaintiff's unnecessary act, prompted by curiosity, was the cause of the accident.

Our former judgment is vacated, and the judgment of the district court is

AFFIRMED.

HAMER, J., dissenting.

This case was tried upon the theory that the boy employed in the packing house was under 15 years of age. The petition alleged that at the time of the injury he was "less than 15 years of age." The boy's mother testified: "As a matter of fact his age was 13, going on 14." The defendant answered: "Defendant is not informed as to the exact age of the plaintiff." There was then a denial of the averments contained in the petition "in that regard." They appear to have gone to trial upon the plaintiff's allegation contained in "in that regard." They appear to have gone to trial upon the plaintiff's allegation contained in the petition that he was less than 15 years of age at the time of the accident. There is no evidence which attempts to dispute or in any way to contradict the mother's testimony that the boy was "13, going on 14." She also testified that the truant officer, McAuley, "knew it positively." Nobody denies that. She also testified that her son "went to school in South Omaha ever since he was five years old." The truant officer undoubtedly knew this. He does not deny it.

The case is to be considered here upon the same theory that it was tried in the district court. We have no business to hear the case in this court upon a different theory than that upon which it was tried in the court below. While the petition may not be very artistic, it states the facts in a way that they can be understood. The petition alleged that the boy, Ora Rookstool, was employed in the hog-killing department of the packing plant; that he "was a minor, and was not familiar with nor did he appreciate the dangers incident to the operation of said elevator, nor did this minor plaintiff understand or appreciate the specific danger * * * of looking into the shaft of said elevator, nor did the defendant company warn this plaintiff of the danger of being caught by the descending elevator while looking into the shaft thereof."

The plaintiff and defendant went to trial upon the plaintiff's allegation that he was less than 15 years of age at the time the accident happened, and the defendant's denial of that allegation. There was undoubtedly an issue to try. Whether the boy was between 14 and 16 or less than 14 might not be material, but, in any event, there would be a liability under the statute.

Section 3575, Rev. St. 1913, forbids the employment of a child under 14 years of age in certain places specified, among which are a manufacturing establishment or a factory or a workshop. The second clause in the section provides that it shall be unlawful for any person, firm or corporation to employ any child under 14 years of age in any business or service "during the hours when the public schools of the town, township, village or city in which the child resides are in session."

It will be noticed that the foregoing section makes the employment of a child under 14 years of age unlawful. It is clearly unlawful, and if the truant officer connived at such employment knowing that the boy was

under 14 years of age, the thing which he did was unlawful, and, whatever his motive may have been, his conduct was still unlawful, and so was the employment of the boy by the packing house.

The next section is a long and labored effort to provide that, where the child is between 14 and 16, he may be permitted to be employed in certain places specified, including a manufacturing establishment or workshop, provided that the person or corporation employing him procures and keeps on file and accessible to the truant officers of the town or city, and certain other officers, an employment certificate.

Section 3577 provides: "An employment certificate shall be approved only by the superintendent of schools of the school corporation in which the child resides, or by a person authorized by him in writing, or, where there is no superintendent of schools, by a person authorized by the school district officers."

Section 3578 provides that the person authorized to issue an employment certificate shall not issue such certificate until he has examined, approved and filed the school record of such child, showing that the child has completed the work of the eighth grade of the public schools or its equivalent, or is regularly attending night school; also "a passport or duly attested transcript of the certificate of birth or baptism, or other religious or official record showing the date and place of birth of such child." It is also provided that an "attested transcript of the birth certificate filed according to law with a registrar of vital statistics, or other officer charged with the duty of recording births, shall be conclusive evidence of the age of such child." It is also provided that the affidavit of the parent or guardian or custodian shall be required only in case the other documents named cannot be produced. It is also provided that such employment certificate shall not be issued until such child has personally appeared before and has been examined by the officer

issuing the certificate, and, then, when such officer shall sign and file in his office a statement "that the child can read and legibly write simple sentences in the English language, and that, in his opinion, the child is 14 years of age, or upwards, and has reached the normal developement of a child of its age, and is in sound health and is physically able to perform the work which it intends to do." There is then a provision for examination of physical fitness by a medical officer of the board or department of health, or by a physician provided by the state board of inspection. There is then a provision that, whenever the person authorized to issue the employment certificate is in doubt about the age of the child, he may require the party or parties, making the application for the certificate to appear before the judge of the juvenile court or the county judge, where the question of the age of the child shall be determined, and the judgment of the court shall be final and binding upon the person issuing the certificate. This section provides: "Every employment certificate shall be signed in the presence of the officer issuing the same by the child in whose name it is issued."

Section 3579 provides that the certificate shall state the date and place of birth of the child, describe the color of the hair and eyes, the height and weight and any distinguishing facial marks, and also the statement that the papers required by section 3578 have been duly examined, approved, and filed, and that the child named in the certificate has appeared before the officer signing the certificate and has been examined.

The act also provides a form of certificate, a limit of the number of hours of employment; the limit to be not more than eight hours in any one day, and not more than 48 hours in any one week.

Section 3585 provides a penalty of $50 where any one employs a child under 16 years of age, and in violation of this article, and also provides a like penalty

where one having a child in his control under such age permits it to be employed in violation of the article. There is also a penalty of not. less than $5 a day nor more than $20 where the party employing the child continues to employ it after being notified by the truant officer or other proper person. There is also a provision for punishing those who make oath to material false statements, by a fine not to exceed $50. There is also a provision touching the right of an officer to visit any person, firm or corporation employing such children. Upon refusal to permit the officer to make such visit, there may be a fine of $50, or imprisonment not exceeding 30 days. The presence of a child under 16 years apparently at work in any of the places enumerated in this article is made evidence of his employment in such place. The deputy commissioner of labor and the truant officers are in duty bound to enforce the provisions of the article, and the county attorney shall file complaints against those supposed to be guilty, when informed that the law has been violated. Truant officers are required to visit the places where child labor is employed.

Section 3586 provides that the governor shall appoint a board of five inspectors, two of whom shall be women, and the chairman shall be the executive head of the board, and shall reside in that county employing the largest number of children under the age of 16. Any member of the board shall have power to demand the examination of any child under 16 years by a regularly licensed physician with a view to ascertaining whether the child is able to perform the labor in which it is employed. "No child under sixteen shall be employed . who cannot obtain a certificate of fitness from such physician."

·Section 3587 provides: "No child under the age of sixteen years shall be employed in any work which by reason of the nature of the work, or place of performance, is dangerous to life or limb, or in which its health

may be injured or its morals may be depraved. Any parent, guardian, or other person, who, having under his control any child, causes or permits such child to work · or be employed in violation of this section, shall be guilty of a misdemeanor and upon conviction shall be fined not more than fifty dollars, or be imprisoned not exceeding ten days."

In this case the child was alleged to be under 15 years, and the mother swore that it was 13, going on 14. It was employed in a packing house, which must be conceded to be a dangerous place. Under the testimony the truant officer and the packing company were all of them guilty. The employer should be fined $50, or be imprisoned not exceeding ten days. While engaged in this unlawful performance the boy came near losing his life, his scalp was lifted up, his teeth were knocked out, yet it is the purpose of the majority opinion that there shall be no liability, and that the thing done is made legitimate.

Whether the purpose of the truant officer was to enable the boy to assist his mother in making the living, or whether it was to get an additional hand for the packing house, no one may tell from the record. She says in her testimony that she furnished the school authorities a certificate showing the boy's birthday to have been July 26, 1895. When asked if she had done so, she said: "Yes; because Mr. McAuley wanted him to be a little bit older on account of helping me out." On redirect examination she testified: "Q. But as a matter of fact his age was 13, going on 14 years old? A. Yes, sir; and the truant officer knew it positively. He went to school in South Omaha ever since he was five years old."

The petition charges that the employment of the boy was at a time when he "was a minor, and was not familiar with nor did he appreciate the dangers incident to the operation of said elevator, nor did this minor plaintiff understand or appreciate the specific danger * * *

of looking into the shaft of said elevator; nor did the defendant company warn this plaintiff of the danger of being caught by the descending elevator while looking into the shaft thereof." It will be noticed that it was the purpose of the pleader to state that the boy did not appreciate the specific danger of looking into the shaft, and that he had not been warned concerning the danger of being caught by the descending elevator. His youth and lack of experience were emphasized. All the facts showing that it was wrong to have the boy employed in such a place are set forth. Of course, everybody knows that a boy at the age of 13, or any where between 13 and 15, might do just such a reckless thing as this boy did, and the purpose of the statute is to keep such boys from doing such acts and from being placed by employers where they are likely to do such acts. The judge of the district court does not appear to have paid very much attention to the child labor law. He seems to have been looking for an opportunity to relieve the defendant from liability. He said: "Now this young man went out of his way to put his head over into that elevator shaft, and I do not see that the defendant was guilty of any negligence, and it seems to me that the plaintiff himself would be guilty of contributory negligence." He then says that he will have to sustain the motion. Of course, the boy went out of his way. All boys do when they are of the age of this boy. The child labor statute was passed because the legislature knew that such boys were likely to get hurt because of their recklessness, and to keep them from being employed in places of this kind. Of course, the learned judge of the district court is a very fair-minded sort of man, but he conceived that the defendant was being tried because of negligence alone, and not because the boy was within the limits of the child labor law. He overlooked the age of the boy, because he spoke of him as "this young man." He could not have been much of a young man at the age of 13.

Section 7662, Rev. St. 1913, provides: "The rules of pleading formerly existing in civil actions are abolished, and hereafter the forms of pleading in civil actions in courts of record, and the rules by which their sufficiency may be determined, are those prescribed by this Code."

Section 7664, Rev. St. 1913, provides: "The petition must contain: First, the name of the court and county in which the action is brought, and the names of the parties, plaintiff and defendant; second, a statement of the facts constituting the cause of action in ordinary and concise language, and without repetition; third, a demand of the relief to which the party supposes himself entitled."

All the requirements of the above section are complied with in the petition, and the undisputed facts show that the boy is 13 years old. It requires a technical construction of the petition to wipe out the boy's claim.

This court in *Hankins v. Reimers*, 86 Neb. 307, held: "Allegations in a petition that a master unlawfully, wrongfully and negligently directed his infant servant to dig a cave in the side of a hill under circumstances particularly alleged, making it dangerous to life and limb to work in said excavation, in effect charges that the master had knowledge or in reason ought to have known of the danger surrounding such work." The court further held: "If the employment of an infant under the age of 16 years, contrary to the provisions of the statute, is the proximate cause of an injury to the child, his master is liable therefor."

The action was one brought against a master for damages following from the death of his infant servant, alleged to have been caused by the master's negligence. The defendant prevailed, and the plaintiff appealed to this court, and this court reversed the judgment of the court below and remanded the case for further proceedings. In that case there was an allegation in the petition that the deceased at the time of the accident

was under the age of 16, and that the work he was directed to do was dangerous to life and limb. The court gave all of the instructions requested by the plaintiff, and they were prepared on the theory that the case was controlled by the general law of master and servant independently of the servant. If there were facts enough stated in that case, it would seem that facts 'enough have been stated in the instant case. In the opinion it was said: "It is competent for the legislature in the exercise of the police power to fix an age below which children may not lawfully be employed in dangerous occupations. *Lenahan v. Pittston Coal Mining Co.*, 218 Pa. St. 311; *Stehle v. Jaeger Automatic Machine Co.*, 220 Pa. St. 617." The report fails to show a dissent in that case, and at that time this court consisted of Judges Reese, Barnes, Letton, Root, Rose, Fawcett and Sedgwick. If that was good law then, it ought to be good law now.

In *Moran v. Dickinson*, 204 Mass. 559, it was held that using an elevator in the course of employment is dangerous to life and limb within the statute.

The tendency to disregard the provisions of the law in a child labor case, or in any case of that nature, is very strong. The community may be very impatient of any sort of restrictions or attempted regulation in the management of what it considers is its own affair. That even judges and jurors may have sympathy with this feeling would not be strange, and especially the judges, for they are the last to give up the things that have been. To illustrate: It is not a great while since the judges down in Massachusetts were engaged in an attempt to suppress witchcraft. They authorized the whipping of parents and children with equal impartiality. The congressman from the south is said to be against all child labor laws. That the rosy flush of health will fade from the cheeks of the children of the neighborhood if they are kept indoors is no difference to him. They are not his children. It is not

his affair that play, the natural inheritance of children, has been taken away from them by the big factory on the bank of the creek, and that they no longer, frequent the shady woods, the rippling brooks, or rove in the fields and lanes. These children, working in the factory and shut off from the sunlight, are a source of revenue to his big constituent, the owner of the factory.