## N. E. HANNAH v. STATE BANK OF WOOD LAKE.[1]

June 28, 1935.

No. 30,402.

*Kief & Kief*, for appellant.
*Lee & Lee* and *J. N. Johnson*, for respondent.

I. M. OLSEN, JUSTICE.

Plaintiff appeals from an order denying his motion to strike out the findings of fact and conclusions of law made by the trial court and make amended findings in favor of the plaintiff, or, if that be denied, then for a new trial of the action. The order denied the entire motion.

The plaintiff brought the action to cancel a chattel mortgage and the promissory note secured thereby on the ground that there had been a material alteration of the chattel mortgage after delivery thereof and without the knowledge or consent of the plaintiff, the mortgagor. The court, after trial, found in defendant's favor and ordered judgment dismissing the action on the merits.

The note and mortgage were given by the plaintiff to the defendant on October 5, 1931. The mortgage securing the note covered certain personal property of the plaintiff, consisting of horses, cattle, and farm machinery therein described, and also the plaintiff's undivided interest in and to all crops grown and harvested

[1]Reported in 261 N. W. 583.

during the year 1931 on a farm in Yellow Medicine county, this state (describing the land). The alteration complained of is that, after the making and delivering of the mortgage, the president of the bank altered the same by inserting therein, after the year 1931, the following: "–32." The note and mortgage were for the amount of $874.

It appeared from the evidence that the plaintiff became indebted to the bank for money borrowed as early as 1916 and that since that time the indebtedness has never been fully paid up; that, since as early as 1923 at least, the course of business in reference to the indebtedness, as carried on between the parties, was in substance as follows: Each year in the fall, October or November, the plaintiff would come to the bank and renew the note evidencing the indebtedness then existing and give a chattel mortgage upon personal property and upon his interest in the crops to be sown and grown on the farm in question during the next year, except that the mortgage taken in the fall of 1929 did not cover the interest in the crops for the year 1930. During certain years small payments were made on the indebtedness, and usually at least the interest was paid at the time of each renewal. At other times small additional sums were borrowed and added. Plaintiff testified that on October 5, 1931, he went into the bank to fix up his indebtedness in the same way he had done in preceding years. The president of the bank then made out the note and mortgage in the same way as had been done in previous years, but apparently by error inserted the crops for the year 1931 instead of the crops for 1932.

The court found that at the time this mortgage was given on October 5, 1931, plaintiff was justly indebted to the defendant in the sum of $874, the amount for which the new mortgage was given; that it was intended that the mortgage should be upon plaintiff's interest in the crops to be grown in the year 1932 on the land in question; that the insertion of "–32" immediately following the year 1931 was thereafter made by the defendant's officer to show the intention of the parties at the time the mortgage was given; that at the time of the execution and delivery of said mortgage the defendant bank already held a valid mortgage upon the crops for the

year 1931, made on October 31, 1930, for the same indebtedness. The court further found that defendant had never asserted any rights or attempted to enforce the terms of either of said mortgages, nor threatened to foreclose said mortgages or asserted any right to the possession of any of the mortgaged property, but has left the plaintiff in the peaceable possession thereof to dispose of the same as he saw fit, without hindrance or restraint; that at the time of the giving of the new mortgage on October 5, 1931, the prior mortgage, given on October 31, 1930, and the note secured thereby, were surrendered to the plaintiff without any further consideration except the giving of the new note and mortgage, and the mortgage of October 31, 1930, was satisfied by the defendant. The court concluded that plaintiff was not entitled to any relief in this action.

It is very clear from the evidence that the intention of the parties, when the mortgage was made, was to have the same cover the crops of 1932 instead of 1931, and the court was fully justified in so holding. The crops for 1931 had some time prior thereto been harvested, and the evidence shows that the material part thereof had already been disposed of by the plaintiff and that the balance was kept by him for use for feed and seed upon the farm, without objection by the defendant, so that the crops for 1931 were of no further avail to the defendant. It is a well recognized rule that where there is a mistake in an instrument whereby the real intention of the parties is not expressed a change made by one of the parties without the consent of the other so as to make the instrument conform to the intention of the parties and to correct the mistake is not such an alteration as will avoid the instrument. The reason frequently given for the rule is that, under the circumstances, the change is immaterial and not fraudulent. The Minnesota case, called to our attention, nearest to covering the question at issue, is Spiering v. Spiering, 138 Minn. 119, 120, 164 N. W. 583. There the court said:

"As there was an entire absence of intent to defraud on the part of plaintiff, as the alteration was merely to correct a mistake and make the instrument conform to the undoubted intention of the parties, we are of the opinion that in reason the better rule is that

the instrument is not avoided. It may well be said that the alteration was not a material one under the circumstances, and that it did not change the legal effect of the instrument. In addition to the discussion and authorities found in Corpus Juris, the case of Busjahn v. McLean, 3 Ind. App. 281, 29 N. E. 494, is much in point. There is nothing in any of our own cases that works against this view. On the contrary, the often repeated statements that an alteration, to avoid an instrument, must be made with intent to defraud, and must be a material one, strongly support the conclusion reached."

In 2 C. J. pp. 1229-1230, § 99, the rule is stated as follows:

"Where there is a mistake in an instrument whereby the real intention of the parties is left imperfectly expressed, many of the courts consider that a change made by one of the parties to the instrument without the consent of the other party, so as to make it conform to the original intention of the parties and to correct the mistake, is not such an alteration as will avoid the instrument. The reason usually given for the application of this rule is that under the circumstances the change is immaterial and not fraudulent, and therefore does not affect the validity of the instrument. It is also sometimes said that in such cases the assent of the parties to the change will be presumed or dispensed with."

The notes thereunder cite cases from more than 15 different states in this country. We need not lengthen this opinion by citing the cases.

The mortgage here in question is not a negotiable instrument, and the question of alteration of the mortgage is not controlled by the negotiable instruments law.

We find nothing in the citations contained in plaintiff's brief contrary to the Spiering case and the rule we have stated. Plaintiff's counsel cite Russell v. Reed, 36 Minn. 376, 31 N. W. 452, on the proposition that a material alteration of a mortgage is presumptively fraudulent. The presumption, however, is not absolute but is rebuttable. In this case there is sufficient evidence to justify

the court in finding in effect, as it did, that the alteration was not fraudulent.

The order appealed from is affirmed.