**Carolyn R. WALKER, Appellant,**

v.

**INDEPENDENCE FEDERAL SAVINGS & LOAN ASSOCIATION, et al., Appellees.**

No. 87–352.

District of Columbia Court of Appeals.

Submitted June 2, 1988.
Decided March 21, 1989.

Carolyn R. Walker, pro se.

James W. Cobb, Washington, D.C., for appellees.

Before ROGERS, Chief Judge,* and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Carolyn Walker appeals from a directed verdict granted in favor of the defendants after trial. The lawsuit arose out of the allegedly wrongful foreclosure sale in 1983 by Independence Federal Savings and Loan Association[1] of Walker's condominium townhouse after Walker failed to repay her home purchase loan.

Walker's principal contention is that when the bank, without notice to Walker, changed the tax and assessment lot number in the deed and deed of trust covering the townhouse and "rerecorded" these instruments with the District's Recorder of Deeds, it thereby committed a fraudulent and material alteration, rendering the deed of trust unenforceable. We hold that the trial court was correct in rejecting this contention. However, Walker raises possible alternate grounds of liability stemming from a prior supposedly aborted foreclosure of the property by the bank in 1980. Neither the trial court's memorandum opinion nor the bank's brief on appeal before us addresses the 1980 foreclosure or its possible consequences. We therefore remand the case for further appropriate action.

## I.

In reviewing a trial court's grant of a directed verdict, we view the evidence in the light most favorable to the party against whom the motion is granted. *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1263 (D.C.1979). Presented in this light, the record reveals the following.

In November 1977, Walker purchased the condominium at 3142 Cherry Rd., N.E. She partially financed the purchase with a loan from the bank of $49,700, secured with a deed of trust on the property. Walker made payments on the loan, at times apparently irregularly, until January 1980, when further payments ceased.

On May 6, 1980, the bank sent Walker a notice of foreclosure sale, which she never received. The notice stated that the amount then owed on the note was $49,230.98. Unbeknownst to her, then, a foreclosure sale took place on August 15, 1980. The property was bought in by the bank for a price of $58,000. In a pretrial interrogatory, the bank claimed that the total indebtedness on that date was $57,092.76. On September 30, 1981, the then trustees under the deed of trust, defendants Darden and Bryant, executed a trustees' deed conveying the property to bank "as the purchasers [sic] thereof."[2] On October 20, 1981, Walker received a "notice to quit and vacate" the premises, notifying her that the "buyer at the foreclosure sale [of the premises] wishes possession of the premises which you presently occupy as a foreclosed homeowner in possession." On December 1, 1981, the bank filed a complaint for possession of real estate against Walker as a "foreclosed homeowner" and obtained a default judgment against Walker on December 18, 1981, and three days later a writ of possession.

In connection with these foreclosure proceedings, the bank discovered that the deed of trust described the property "for assessment and taxation purposes" as being lot "2316," while the District's Department of Finance and Revenue records listed the property as tax lot "2315." Without notice to Walker, the bank changed the tax lot number in the deed of trust from "2316" to "2315" to conform to the Finance and Revenue records and then rerecorded the instrument on May 30, 1980. Later, during the course of the eviction litigation, the bank became aware of further title prob-

---

\* Judge Rogers was an Associate Judge at the time this case was submitted for decision. She became Chief Judge on November 1, 1988.

1. The original loan was made by Community Federal Savings and Loan Association, which in July 1981 merged into Independence Federal. We refer to the two entities collectively as the "bank." The individually named defendants are officers or agents of the bank and trustees under the deed of trust.

2. No explanation appears for the one-year delay in executing this trustees' deed, which was recorded on December 21, 1981.

lems presented by the fact that while a corrected deed of trust had been recorded, the original deed still bore an erroneous description of the lot number for assessment and taxation purposes. In 1982, again without notice to Walker, the original deed was similarly corrected and rerecorded. In all other respects the property descriptions set forth in the deed and deed of trust were identical and accurately described the Cherry Road property that Walker had purchased and in which she resided until ultimately evicted.[3]

As a result of these title problems, the bank apparently determined to "cancel" the 1980 foreclosure sale and set about foreclosing afresh.[4] The second sale was postponed when Walker filed a petition in bankruptcy. Eventually, however, on May 5, 1983, after proper publication and notice, the property was sold at a renewed foreclosure sale held at the direction of defendant Williams, the then incumbent successor trustee under the deed of trust. Walker was thereafter evicted.

Walker filed a complaint, subsequently amended,[5] against defendants seeking a wide range of relief arising out of the foregoing facts. At the close of the evidence, the defendants moved for a directed verdict on all the causes of action, which the trial court granted.

## II.

The trial court in its written opinion, 115 Daily Wash.L.Rep. 1033 (D.C. Super Ct. May 20, 1987), summarized the existing state of the law with respect to the effect of the alterations made here on the validity of the deed of trust.[6] Insofar as necessary to support the directed verdict against any liability flowing from such alterations,[7] we adopt its discussion as follows (footnotes are by the trial court):

---

3. The original deed of trust that plaintiff conveyed to the bank to secure the loan described the property as follows:

    Part of Lot Eight (8) in the Square Forty-three Hundred Twenty-six (4326) in the subdivision made by the United States of America, as per plat recorded in Liber 162 at folio 41 in the Office of the Surveyor for the District of Columbia.

    That part of land hereby conveyed being more particularly designed as Unit No. 39–3142 of Fort Lincoln New Town Condominium 1; Current Share Interest; .00477494 and Minimum Share Interest;—according to the Declaration of Fort Lincoln Condominium 1 thereof dated August 10, 1976 as Instrument No. 21033 among the aforesaid land Records, as per plat of Condominium Subdivision dated August 11, 1976 in Condominium 1—Phase VI, dated August 19, 1977, and recorded August 29, 1977, as Instrument No. 27484 among the aforesaid Land Records, as per plat of condominium Subdivision dated August 30, 1977 in Condominium Book No. 20 at page 29 of the Records of the Office of the Surveyor for the District of Columbia.

    The aforesaid property being now known for assessment and taxation purposes as Lot numbered Twenty-three Hundred Sixteen (2316) in Square number Forty-three Hundred Twenty-six (4326).

    Except for the change in the tax lot number to 2315, the same description appears in the rerecorded instrument together with the notation, "rerecorded to correct the assessment and taxation lot number." There was testimony that the bank also corrected and rerecorded the deed to the property. Except for the lot number correction, the property descriptions contained in those documents are also identical.

4. Exactly what happened is unclear from the record before us. There was no explicit evidence of the cancellation itself or of transfer of title back to the trustees under the deed of trust. Reference is made in the amended complaint to a document filed by the bank dated March 10, 1982, titled "Notice of Cancellation of Foreclosure Sale."

5. Walker's original complaint was filed May 6, 1983. Following a change in counsel, an amended complaint was filed on June 15, 1984.

6. The opinion also addresses Walker's claim that the bank breached an agreement to refrain from foreclosure. Walker does not directly press before us any ground of error in the grant of the directed verdict on this particular claim. However, in connection with her defamation and privacy invasion claims she does rely in part on such an alleged agreement. We think that proof of the precise terms of any such oral agreement was insufficient to support a jury finding of breach on the facts here. *Stansel v. American Security Bank*, 547 A.2d 990, 993 (D.C. 1988).

7. We do not reach the issue whether, if the alteration was material enough to invalidate the deed of trust, the underlying obligation to repay the loan was also extinguished, a far more questionable proposition. Nor do we reach the issue whether, had Walker been able to show any evidence of damages flowing therefrom, liabili-

"1. This suit rests on Mrs. Walker's conviction that, simply by altering the tax lot number on the deeds, the bank adversely affected her interest in the property at 3142 Cherry Road, N.E. Mrs. Walker's own evidence at the trial, however, confirmed that she resided for years at that Cherry Road property; that the residence at this address is the house she intended to purchase from the developer; that it is also the property she gave as security for the bank loan she obtained to finance her purchase; that she fell substantially in arrears in repaying that loan; that the house at 3142 Cherry Road, N.E. is the one from which she was evicted after the bank foreclosed; and that the change from "2316" to "2315" in the deed and deed of trust conformed those instruments to the lot number that appears in the District's revenue records for the townhouse at 3142 Cherry Road, N.E., the house in suit. Plaintiff's own evidence thus precludes any finding that the deed corrections adversely affected her interest in the property in any way unless, as she contends, the bank's correction of the tax lot number in the deed and deed of trust "materially altered" those instruments and by doing so extinguished her liability on the note. There is no authority in the District of Columbia law for that proposition. After reviewing the comparable laws in other jurisdictions, the Court is satisfied that this contention is without merit.

"2. Modern rules of property law permit one party to a deed to correct it unilaterally where the legal effect intended by the parties to the conveyance remains unchanged. Casner, *American Law of Property*, § 12.85 at 365–66 (2d ed. 1974) and the authorities there cited. Unilateral corrections that neither add, subtract or substitute some new or different element are uniformly upheld. *Id.* The modern rule condemns only "material" changes, *i.e.*, those changes that alter the conveyance to contravene the parties' wishes.[8] Changes of that nature do void the conveyance and do extinguish the unconsenting party's obligation. While there are no District cases squarely on point, Maryland follows the modern rule. *See Etgen v. Washington County Building & Loan Ass'n*, 184 Md. 412, 418–19, 41 A.2d 290, 292–93 (1945). In the absence of appellate or other authority in this jurisdiction, the Court may be guided by Maryland common law. *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983); *Dennis v. Walker*, 284 F.Supp. 413, 416 (D.D.C. 1968) (holding that where the point has not been determined in the District of Columbia, special attention should be directed to the law of Maryland because the District was "carved out of Maryland and derives its common law from that State"). The modern rule is the sounder approach, as reflected by the fact that the old common law rule—that any alteration in a deed after execution and delivery, no matter how insignificant, rendered the instrument void—has been abandoned in almost every jurisdiction.[9] The Court has no reason to believe that our Court of Appeals would follow the old rule, and plaintiff has suggested none.

"Under the modern rule, changes by one party that simply describe the interest con-

---

ty existed for the alteration to the deed, to which the bank was not an immediate party but only a successor in interest.

**8.** Material alterations include modifications to a conveyance purporting to transfer wholly different property from that originally intended, *Moelle v. Sherwood*, 148 U.S. 21, 13 S.Ct. 426, 37 L.Ed. 350 (1893); or inserting additional property, *National Bank of Commerce v. May*, 583 S.W.2d 685 (Tex.1979); *Home Security Corp. v. Gentry*, 235 So.2d 249 (Miss.1970); *Mullins v. Merchandise Sales Co.*, 192 So.2d 700 (Miss. 1966); or supplying a description where the conveyance contained none. *Fitzgan v. Burke*, 61 A.2d 721 (D.C.1948).

**9.** The Court's research discloses that only New Jersey and Missouri still follow the old rule. *See* Casner, *American Law of Property*, § 12.85 at 365 n. 12 (2d ed. 1974) and the authorities there cited.

Those jurisdictions adopting the modern rule do so on various grounds, *e.g.*, that the Court may presume assent to unilateral changes that do not alter or merely effectuate the parties' intent. *See, e.g., Whitman v. Whitman*, 206 La. 1, 12–15, 18 So.2d 633, 637 (1944); *Hannah v. State Bank of Wood Lake, Minn.*, 195 Minn. 54, 57, 261 N.W. 583, 584 (1935).

The cases cited by plaintiff are not to the contrary. They all deal with material alterations that depart from the parties' intentions.

veyed with greater particularity, *Boys v. Long,* 268 P.2d 890, 891–93 (Okla.1954), or correct an erroneous property description, *Whitman v. Whitman, supra,* 206 La. at 11–15, 18 So.2d at 635–36, or rectify a clerical error in drafting, *Hannah v. State Bank of Wood Lake, Minn.,* 195 Minn. 54, 57, 261 N.W. 583, 584 (1935), do not permit the nonconsenting party to repudiate liability. Changes of this nature do not materially alter the conveyance. Thus, for example, in *Whitman, supra,* the Supreme Court of Louisiana upheld the unilateral correction of a deed changing the property description from "N.E. ¼" to "N.W. ¼" where "the alteration in the description had no other purpose or effect than to make the instrument express the true intention of all the parties to it." 206 La. at 14, 18 So.2d at 637.

"3. In the case at bar, the bank's alteration of the tax lot numbers in the deed and deed of trust to make them correspond to the number assigned the parcel by the District Department of Finance and Revenue is simply not a material alteration. The change neither added, subtracted or substituted property different from that contemplated by the parties initially. As the Court has already noted, Mrs. Walker does not contend that she intended to buy any other property than the townhouse at 3142 Cherry Road, N.E. Neither did she deny that she lived in that very property for over four years. Nowhere has she urged that she thought she owned some other house. The short of it is that Mrs. Walker's own testimony confirms that the bank's corrections merely conformed the tax lot number in the deed to the tax lot number in the District's Finance and Revenue records. In these circumstances, the correction is not a material alteration. It therefore neither divested Mrs. Walker of her interest in the Cherry Road townhouse nor relieved her of her obligation on the note she gave to finance the purchase of that home.

"To be sure, it would have been better had the bank notified Mrs. Walker of its corrections to the deed. Had Mrs. Walker been informed of the discrepancy in lot numbers at the outset, she might have withheld her consent to the correction—but no reason has been suggested why she would want to do so. If the trustees had sought Court permission to make the change, it would have had to be granted as a ministerial change. The evidence is uncontroverted that it was simply a correction of a clerical error. No reasonable juror would have found otherwise on this record."

The resolution of the alteration issue effectively disposes of Walker's other contentions of error insofar as they are based on that issue. Since the documents were not materially altered, there was no evidence that by rerecording them the bank was attributing false statements to Walker, as she asserts. Since the documents were not invalidated, advertising that the bank had a right to foreclose was not false or defamatory on that account. In rerecording the documents the bank did not invade Walker's privacy by appropriating the value of Walker's name for its own use or benefit. *See Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580, 592 (D.C.1985); Restatement (Second) of Torts § 652C, comment c (1977). Finally, there was no evidence of anything close to the requisite "clear and convincing evidence" that the bank acted with fraudulent intent. *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).[10]

■ However, Walker asserts that the trial court erred in not considering any possibility of liability arising independently from the making of the alterations. In particular, focusing on the 1980 foreclosure

---

10. Walker also argues that the bank breached its fiduciary duty to disclose any apparent defect in her title. Assuming that this argument was adequately preserved for appellate review and that such a fiduciary relationship existed, there was no evidence of any actual defect in her title, and no harm in non-disclosure of a non-material fact. *See* W. Keeton, Prosser & Keeton on Torts § 106, at 737–39 (1984). This is not to say that we take issue with the trial court's observation quoted above that it would have been better had the bank notified Walker of the corrections.

**1024**

proceedings and related events, she invokes the principle in mortgage law that a foreclosure sale reduces or extinguishes the debt by the amount bid (net of foreclosure costs) at the sale, Am.Jur.2d, *Mortgages* § 923 (1971); *see* D.C.Code § 45–716 (1981); *Finley v. Friedman*, 159 A.2d 668 (D.C. 1960), thus arguably making wrongful the foreclosure actions taken subsequent to 1980. Although the complaint sets forth such a theory of liability [11] and considerable evidence (including relevant documents as exhibits) [12] was introduced at trial concerning the events of the 1980 foreclosure,[13] neither the trial court's opinion nor the bank's brief before us on appeal [14] makes any mention of these happenings or any liability that might flow therefrom. Under these circumstances, we are constrained to remand the case to the trial court for further consideration or other appropriate action. *See Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n*, 548 A.2d 87 (D.C.1988).

*So ordered.*

[11]. The complaint and Walker's brief to us also assert certain related charges; e.g., the failure to account to Walker with respect to the alleged surplus proceeds of the 1980 sale.

[12]. Included among them were the published notice of sale, the trustees' deed conveying the property to the bank as the purchaser at the sale and setting forth a foreclosure purchase price of $58,000, and the bank's complaint to evict Walker following the sale. The trustees' deed was the subject of some confusion at the trial, sometimes being erroneously referred to as the equivalent of a deed of trust to the trustee or as a formalistic document simply transferring title from Community Federal to Independence Federal upon their merger.

[13]. After some evidence was introduced concerning the eviction action brought by the bank following the 1980 foreclosure, the trial court forbade any further reference to landlord and tenant matters. However, to the extent that the 1980 foreclosure might create grounds for liability, the action indicated the bank's position as owner of the property following the 1980 foreclosure. When counsel in argument with respect to the directed verdict motion attempted to raise the subject of the first foreclosure, he was cut off with the cryptic remark, "No sale is made under, so that's the end of it."

[14]. This is so even though Walker's brief discusses the 1980 foreclosure as part of her first issue presented on appeal.